## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MERCEDES-BENZ FINANCIAL SERVICES USA, LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE CITY OF NEW YORK, and FIVE J'S AUTOMOTIVE LTD, <br><br> Defendants. | **CIVIL CASE NO: 21-cv-3908 (VSB)** |

---

## MERCEDES-BENZ FINANCIAL SERVICES USA, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

---

**NORRIS McLAUGHLIN P.A.**
Nicholas A. Duston, Esq.
Benjamin D. Schwartz
7 Times Square, 21st Fl.
New York, NY 10036
(908) 252-4208
naduston@norris-law.com
bschwartz@norris-law.com
*Attorneys for Plaintiff, MBFS-Benz Financial Services USA, LLC*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF CONTENTS................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT .................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 3

    I.    CNY's "Boot and Tow" Policy..................................................................... 3

    II.    CNY's Seizure and Detention of the Vehicle Pursuant to the Boot and Tow
        Policy ......................................................................................................... 4

    III.    Damages..................................................................................................... 5

LEGAL ARGUMENT .................................................................................................... 6

    I.    Summary Judgment is warranted where there are no *genuine* disputes of any
        *material* fact, and where Plaintiff is entitled to judgment as a matter of law. .............. 6

    II.    CNY'S position as judgment creditor is subordinate to MBFS
        as a matter of law. ..................................................................................... 6

    III.    MBFS is entitled to judgment as a matter of law under 42 U.S.C. § 1983. ................... 8

        A.    Defendants deprived MBFS of constitutionally protected property
            interests in the Vehicle. ....................................................................... 8

        B.    Defendant's Deprived MBFS Of The Federal Right to Due Process
            Guaranteed By The Fourteenth Amendment. ...................................... 10

            i.    Notification of unilateral demands is not constitutionally
                appropriate notice............................................................... 10

            ii.    The absence of any hearing is *per se* unconstitutional......................... 11

            iii.    CNY was required to provide a hearing before imposing
                deprivation on MBFS......................................................... 11

            iv.    As to Lienholders, the boot and tow program fails the
                Mathews test. ...................................................................... 12

            v.    Defendants are required to have a neutral review their actions
                regardless of the expected outcome, and regardless of a request
                for one ................................................................................ 14

            vi.    Defendants cannot argue that MBFS should have parted with
                another form or property—money—to regain possession
                of the Vehicle. .................................................................... 15

vii.    Summary of the point ........................................................ 16

C.    Defendants deprived MBFS of a federal right when it unreasonably
seized the Vehicle. ........................................................ 17

i.    There is no exception to the warrant requirement
for debt collection ........................................................ 18

ii.    Regardless of whether CNY's initial seizure was reasonable,
the manner of execution of that seizure violated the
Fourth Amendment ........................................................ 19

D.    CNY Deprived MBFS of the Federal Right to be free from
Uncompensated Takings ........................................................ 21

E.    CNY and FJA's Actions were all Taken under Color of Law. ........................ 23

F.    There is no genuine dispute that CNY is liable under *Monell*,
because CNY's policies and customs were the "moving force" behind
the deprivations. ........................................................ 25

IV.    MBFS's Damages ........................................................ 25

A.    Actual Damages ........................................................ 25

B.    Nominal Damages ........................................................ 26

V.    MBFS's Request For Declaratory Relief. ........................................ 26

CONCLUSION ........................................................ 27

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

Adenariwo v. Fed. Mar. Comm'n,
    808 F.3d 74 (D.C. Cir. 2015)...............................................................................16

Almeida v. Holder,
    588 F.3d 778 (2nd Cir. 2009)...............................................................................17

Am. Honda Fin. Corp. v. City of Revere,
    471 F. Supp. 3d 399 (D. Mass. 2020) ..............................................................16, 24

Am. Honda Fin. Corp. v. Twp. of Aston,
    546 F.Supp.3d 371 (E.D. Pa. 2021) ....................................................................9, 26

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)................................................................................................6

Armstrong v. United States,
    364 U.S. 40 (1960)...........................................................................................21, 22

Barnett v. Harwood,
    189 F.3d 297 (2d Cir. 1999).................................................................................9

Bd. of Regents of State Colleges v. Roth,
    408 U.S. 564 (1972)...............................................................................................8

Bell v. Burson,
    402 U.S. 535 (1971).............................................................................................13

Burton v. Wilmington Parking Auth.,
    365 U.S. 715 (1961).............................................................................................23

Butler v. Castro,
    896 F.2d (2d Cir. 1990).......................................................................................10

Carey v Piphus,
    435 U.S. 247 (1978).......................................................................................25, 26

Christopher B. Propert v. District of Columbia,
    948 F.2d 1327 (D.C. Cir. 1991) ..........................................................................11

City of Canton, Ohio v. Harris,
    489 U.S. 378 (1989)...............................................................................................8

City of Monterey v. Del Monte Dunes at Monterey, Ltd.,
    526 U.S. 687 (1999).............................................................................................25

Connecticut v. Doehr,
    501 U.S. 1 (1991) ..................................................................................................9, 10, 15

Craig v. Carson,
    449 F. Supp. 385 (M.D. Fla. 1978) ...................................................................................16

DCFS USA, LLC v. D.C.,
    803 F. Supp. 2d 29 (D.D.C. 2011) ....................................................................................12

Delaware & Hudson Ry. Co. v. Consol. Rail Corp.,
    902 F.2d 174 (2d Cir. 1990)................................................................................................6

Dow Jones & Co. v. Harrods, Ltd.,
    237 F. Supp. 2d 394 (S.D.N.Y. 2002), aff'd, 346 F.3d 357 (2d Cir. 2003)...........................26

Draper v. Coombs,
    792 F.2d 915 (9th Cir. 1986) ............................................................................................15

Fasciana v. County of Suffolk,
    996 F. Supp. 2d 174 (E.D.N.Y. 2014) ...............................................................................20

Ford Motor Credit Co. v NYC Police Dep't.,
    503 F.3d 186 (2d Cir. 2007)..................................................................................... passim

Foster v. City of Philadelphia,
    No. CIV.A. 12-5851, 2014 WL 5821278 (E.D. Pa. Nov. 10, 2014) ......................................24

Frein v Pennsylvania State Police,
    47 F.4th 247 (3rd Cir. 2022) .......................................................................................18, 22

Frier v. City of Vandalia, Ill.,
    770 F.2d 699 (7th Cir. 1985) ............................................................................................15

Fuentes v. Shevin,
    407 U.S. 67 (1972)................................................................................................... passim

Gomez v. Toledo,
    446 U.S. 635 (1980)............................................................................................................8

Harrell v. City of New York,
    138 F. Supp. 3d 479 (S.D.N.Y. 2015)..............................................................12, 13, 18, 19

Henry v. City of Middletown, Ohio,
    655 F. App'x 451 (6th Cir. 2016) ......................................................................................16

Hernandez v. European Auto Collision, Inc.,
    487 F.2d 378 (2d Cir. 1973)..............................................................................................24

Hines v. City of Albany,
    542 F. Supp. 2d 218 (N.D.N.Y. 2008) ...............................................................................21

HVT, Inc. v. Port Auth. of NY & NJ,
    No. 15-cv-5867(MKB)(VMS), 2018 WL 3134414 (E.D.N.Y. Feb. 15, 2018),
    R&R Adopted, WL 1409821 (E.D.N.Y. Mar. 21, 2018)..........................................................11

Illinois v. Caballes,
    543 U.S. 405 (2005)...............................................................................................18, 20

Illinois v. McArthur,
    531 U.S. 326 (2001).....................................................................................................17

Johnson v. Bradshaw,
    772 F. Supp. 501 (D. Nev. 1991), aff'd, 5 F.3d 537 (9th Cir. 1993) ......................................24

Kentucky Dept. of Corrs. v. Thompson,
    490 U.S. 454 (1989).....................................................................................................10

Knick v. Township of Scott,
    139 S. Ct. 2162 (2019)..................................................................................................22

Koninklijke Luchtvaart Maatschaapij, N. V. v. United Techs. Corp.,
    610 F.2d 1052 (2d Cir. 1979)..........................................................................................25

Krimstock v. Kelly,
    306 F.3d 40 (2d Cir. 2002)......................................................................................15, 19

Lee v. City of Chicago,
    330 F.3d 456 (7th Cir. 2003) ...........................................................................................19

Manuel v. City of Joliet, Ill.,
    137 S. Ct. 911 (2017)............................................................................................19, 20

Mathews v. Eldridge,
    424 U.S. (1976)......................................................................................11, 12, 13, 14

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986).......................................................................................................6

Matthias v. Bingley,
    906 F.2d 1047 (5th Cir. 1990) ..........................................................................................13

Mays v. Scranton City Police Dept.,
    503 F. Supp. 1255 (M.D. Pa. 1980) ....................................................................................9

McClendon v. Rosetti,
    460 F.2d 111 (2d Cir. 1972).............................................................................................15

Memphis Light, Gas & Water Div. v. Craft,
    436 U.S. 1 (1978).........................................................................................................10

Mennonite Bd. of Missions v. Adams,
    462 U.S. 791 (1983).............................................................................................8

Monell v. Department of Soc. Svcs.,
    436 U.S. 658 (1978)...........................................................................................25

Morgan v. Wofford,
    472 F.2d 822 (5th Cir. 1973) ...........................................................................14

Mullane v. Central Hanover Trust Co.,
    339 U.S. 306 (1950)...........................................................................................10

O.P. M. Leasing Services, Inc. v Blue Cross and Blue Shield of
    Greater New York, 46 B.R. 661 (Bankr. S.D.N.Y 1985) ...........................................7

Price v. City of Junction, Tex.,
    711 F.2d 582 (5th Cir. 1983) ...........................................................................10

Robinson v. Concentra Health Servs., Inc.,
    781 F.3d 42 (2d Cir. 2015)..................................................................................6

Rodriguez v. United States,
    575 U.S. 348 (2015)...........................................................................................20

Rosemont Taxicab Co. v. Philadelphia Parking Auth.,
    327 F. Supp. 3d 803 (E.D. Pa. 2018) ..........................................................13, 19

Santander Consumer USA, Inc. v. City of Yonkers,
    No. 20-CV-4553 (KMK), 2022 WL 4134718 (S.D.N.Y. Sept. 12, 2022) ............15

Santander Consumer USA, Inc. v. Cnty. of Nassau,
    ---F.Supp.3d---, 2022 WL 3647281 (E.D.N.Y. Aug. 24, 2022) ...................9, 11, 21

Santander Consumer USA, Inc. v. Cnty. of Suffolk,
    No. 20-CV-2656(JS)(AKT), 2021 WL 4480574 (E.D.N.Y. Sept. 30, 2021) ...........8

Saukstelis v. City of Chicago,
    932 F.2d 1171 (7th Cir. 1991) ...........................................................................9

Shaul v. Cherry Valley-Springfield Cent. Sch. Dist.,
    363 F.3d 177 (2d Cir. 2004)...............................................................................19

Smith v. Insley's Inc.,
    499 F.3d 875 (8th Cir. 2007) ...........................................................................24

Stypmann v. City of San Francisco,
    557 F.2d 1338 (9th Cir.1977) .....................................................................15, 24

Tedeschi v. Blackwood,
    410 F. Supp. 34 (D. Conn. 1976)......................................................................24

United States v. Burgard,
    675 F.3d 1029 (7th Cir. 2012) ................................................................19

United States v. Cardona-Sandoval,
    6 F.3d 15 (1st Cir. 1993).......................................................................20

United States v. Jacobsen,
    466 U.S. 109 (1984)...................................................................17, 18, 20

United States v. James Daniel Good Real Prop.,
    510 U.S. 43 (1993)......................................................................11, 13, 14

United States v Pewee Coal Co.,
    341 U.S. 114 (1951)..............................................................................21

United States v. Place,
    462 U.S. 696 (1983)..............................................................................17

United States v VERTOL H21C, Reg. No. N8540,
    545 F.2d 648 (9th Cir. 1976) ................................................................19

United States v. Wilson,
    540 F.2d 1100 (D.C. Cir. 1976).............................................................20

West v. Atkins,
    487 U.S. 42 (1988)...............................................................................23

Zinermon v. Burch,
    494 U.S. 113 (1990)........................................................................11, 19

## STATE CASES

Fitzpatrick v Bank of New York,
    124 Misc.2d 732 (1983)..........................................................................7

SK Global America, Inc. v John Roberts, Inc.,
    6 AD3d 179 (1st Dept. 2004)..................................................................7

Swezey v Lynch,
    87 AD3d 119 (1st Dept. 2011)................................................................7

Swezey v Merrill Lynch, Pierce, Fenner & Smith Inc.,
    122 AD3d 489 (1st Dept. 2014)..............................................................7

Toyota Lease Trust v. Village of Freeport,
    20-cv-02207(DG)(SIL), Dkt. No. 62 ......................................................21

## FEDERAL STATUTES

42 U.S.C. § 1983....................................................................8, 22, 23, 25

## STATUTES

N.Y. Penal Law § 165.05 ................................................................................................24

N.Y. U.C.C. § 9-603 ........................................................................................................7

N.Y. UCC § 9-609 ...........................................................................................................8

New York State Lien Law ...............................................................................................24

NY UCC § 9-609(a)(1) .....................................................................................................7

## RULES

CPLR 5201(b) ...................................................................................................................7

CPLR Article 52 ...............................................................................................................6

Fed. R. Civ. P. 56(a) ........................................................................................................6

## CONSTITUTIONAL PROVISIONS

U.S. Const. Fourth Amendment........................................................................... passim

U.S. Const. Fifth Amendment......................................................................................21, 22

## OTHER AUTHORITIES

Restatement (Second) of Torts § 927 (1979) ..................................................................25

Plaintiff, Mercedes-Benz Financial Services USA, LLC ("MBFS"), respectfully submits this Memorandum of Law in support of its motion for summary judgment against Defendants, The City of New York ("CNY") and Five J's Automotive, LTD ("FJA").

## PRELIMINARY STATEMENT

In 2007, <u>Ford Motor Credit Co. v NYC Police Dep't.</u>, 503 F.3d 186 (2d Cir. 2007), confirmed that governmental interference with lienholder rights in vehicles must be accompanied by constitutional safeguards. This case arises because nearly two decades after <u>Ford Motor</u>, CNY, in performing its public function of collecting parking ticket fines via its "parking enforcement" policy (a/k/a Boot and Tow Program), does not extend required constitutional protections to lienholders, especially the due process protection of the opportunity for a hearing at a meaningful time and manner.

On October 10, 2019, CNY and FJA seized a 2015 Mercedes-Benz bearing VIN WDZPE8DC5F5995793 (the "Vehicle") in which MBFS held a lien. When MBFS contacted CNY to recover the Vehicle, CNY refused, and instead gave MBFS an ultimatum: pay all of the enforcement, towing and storage charges incurred by CNY relative to the seizure of the Vehicle or the Vehicle would be detained and sold. CNY held no hearing relating to CNY's seizure or detention of the Vehicle or the ultimatum that MBFS do as CNY dictates. MBFS tried to comply with CNY's ultimatum but was unable to do so. CNY then sold the Vehicle, also unaccompanied by any hearing, and used the proceeds thereof to pay its expenses. These actions all occurred exactly as CNY intended under its Boot and Tow Program.

CNY's Boot and Tow Program uses vehicle seizure to force payment of overdue parking fines. CNY converts fines to money judgments. When judgments against a person exceed $350.00, CNY searches for a vehicle owned by that person. Once found, the vehicle is taken into custody in exactly the manner advertised: the vehicle is immobilized with a mechanical "boot" on its wheel,

and then "towed" away. If CNY's demands are still not satisfied after the boot and tow, CNY has the vehicle auctioned with the proceeds used to pay CNY's judgments and expenses.

CNY's Boot and Tow Program is effectuated through a tripartite enterprise with two private companies, beginning with IPT, LLC ("Paylock"), which applies the "Boot" to initiate the physical seizure of the vehicle(s).  Paylock sub-contracts with FJA to "tow" and detain the vehicle(s).  The most critical feature of this enterprise is the symbiosis of shared interest flowing from CNY to FJA (through Paylock). FJA provides the towing and storage services needed for the Boot and Tow Program to operate and agrees to not release vehicles unless it receives the order from CNY to do so. In exchange, CNY extends its mantle of authority to protect and profit FJA. CNY protects FJA because, if FJA towed a vehicle without the consent of the owner and demanded money for its return, it would be guilty of felony theft and extortion.  Of course, that is not what happens precisely because of CNY's grant of CNY's governmental power to legitimize FJA's conduct. FJA profits through CNY making others (including lienholders) pay FJA's towing and storage fees—even though CNY is the party who contracted FJA's services—by withholding permission to return the vehicle unless fees are paid, or by providing FJA payment from the sales proceeds once the vehicle is sold.

In other words, CNY's Boot and Tow joint enterprise requires lienholders to finance CNY's debt collection activities against drivers who fail to pay parking fines.  CNY admits that it does not include any form of hearing for lienholders as to the propriety of the detention of towed vehicles, or the ultimatum that lienholders pay the Boot and Tow enforcement, towing and storage fees. CNY does not justify how it can deprive lienholders of constitutionally protected property rights in a vehicle without a hearing. CNY's actions are not consistent with Federal Constitutional principles, particularly the protection of procedural due process and protections against

unreasonable seizures and uncompensated takings.

The parties do not disagree on what happened to the Vehicle, nor the contents of the Defendants' regular policy and practices. The parties disagree solely on the legal consequences of these undisputed facts. For this reason, this is the quintessential summary judgment case, and MBFS is entitled to summary judgment as a matter of law.

## STATEMENT OF FACTS

## I.    CNY's "Boot and Tow" Policy

CNY has provided a written declaration describing the parking enforcement policy governing its collection of parking ticket fines (colloquially its "Boot and Tow Program"). See Plaintiff's Statement of Material Facts in Support of Motion for Partial Summary Judgment ("SMF"), ¶ 22; see also Decl. of Nicholas A. Duston, Esq. at Ex. 7 (the "Alverio Decl."). CNY enters money judgments for unpaid parking fines. Alverio Decl., ¶¶ 6, 11. These judgments give CNY the status of judgment creditor of the person who is liable for the parking fines. Alverio Decl., ¶ 9. The holder of secured interests in the vehicles used in the illegal parking (lienholders) are not liable for parking fines or judgments based upon those fines. Alverio Decl., ¶ 25. CNY does not include lienholders in the process by which it obtains its judgments. Alverio Decl., ¶¶ 4, 5. If a parking fine judgment exceeds $350.00 it may be enforced by seizing a vehicle owned by the judgment debtor. Alverio Decl., ¶ 7. CNY effectuates its Boot and Tow Program through contracts with Paylock and Paylock's sub-contract with FJA. Duston Decl., Exs. 9, 10 (contract between CNY and Paylock; contract between FJA and Paylock); see also SMF, ¶ 22. Through these relationships, CNY controls the disposition of vehicles seized under its Boot and Tow Program. Alverio Decl., ¶ 25; SMF, ¶ 25.

Lienholders are notified that a vehicle has been seized. Alverio Decl., ¶ 15. If a lienholder seeks to recover a vehicle, CNY's policy is to refuse and deny possession of the vehicle to the

lienholder unless the lienholder complies with two conditions: (1) pay all of CNY's enforcement costs (*i.e.* the towing and storage fees incurred by FJA in assisting CNY in enforcing the "boot and tow" policy), and (2) provide CNY with a hold harmless agreement which absolves CNY of all liability relative to its seizure of the vehicle. Alverio Decl., ¶ 19. The towing and storage fees are collected by CNY to be paid as compensation to the towing company who performed the impoundment services under the Boot and Tow Program. Alverio Decl., ¶ 25, n.7.

It is CNY's policy to not afford lienholders any opportunity to be heard at a meaningful time and manner regarding CNY's refusal to release the vehicle unless a lienholder obeys its demand for compliance with the two conditions.  SMF, ¶¶ 15-18, 26, 27.  It is CNY's policy to not obtain a warrant or any similar court order or other form of neutral review of CNY's insistence that a lienholder obey its two conditions. SMF, ¶ 23. CNY ensures that it maintains control over seized vehicles by its arrangement with FJA because FJA will not allow a lienholder to recover a vehicle unless CNY decides to "send a vehicle release to the tow company." Alverio Decl., ¶ 16 (instruction #3); see also SMF, ¶ 25.

If a lienholder does not comply with CNY's conditions, CNY auctions the vehicle and the proceeds are used to pay CNY's enforcement costs, including paying towing and storage fees to FJA. Alverio Decl., ¶ 26.  It is CNY's policy to not compensate lienholders for any aspect of CNY's Boot and Tow Program. Alverio Decl., ¶ 29.

## II.    **CNY's Seizure and Detention of the Vehicle Pursuant to the Boot and Tow Policy**

On and before July 9, 2015, MBFS held the first priority duly perfect security interest and lien in the Vehicle and the security agreement. SMF, ¶¶ 7, 9, 12.  As of October 10, 2019, the debt secured by the lien was in default, which was never cured.  Id. at ¶ 10. MBFS thus was entitled to possession of the Vehicle at all relevant times. Id. at ¶ 11.

On October 10, 2019, FJA removed the Vehicle from its location pursuant to CNY's Boot

and Tow Program. Id. at ¶ 13, 14. CNY asserted "constructive custody" over the Vehicle and FJA acknowledged that it was under such "an order" from CNY to hold the Vehicle until directed otherwise. Id. at ¶ 15.

On October 11, 2019, the Marshal enforcing CNY's Boot and Tow Program sent a letter to MBFS stating that the Vehicle had been seized and that in order to "retrieve" this vehicle MBFS must pay "applicable fees" including storage fees and poundage. Id. at ¶ 16. CNY also conditioned release of the Vehicle upon MBFS providing a release to CNY for all claims relating to the towing of the Vehicle. Alverio Decl., ¶ 19 (describing that CNY requested a "hold harmless letter"). CNY at all times followed its standard practices under its Boot and Tow Program with respect to the Vehicle. Id. at ¶ 29.  CNY did not obtain a warrant or Court order at any time with regard to the Vehicle. Id. at ¶ 22. CNY did not arrange for a hearing before a neutral decision maker relating to the propriety of the towing, detention, refusal to release upon demand for payment of fees, or auction of the Vehicle. SMF, ¶¶ 26, 27.

MBFS attempted to comply with CNY's conditions for release of the Vehicle but was unable to do so. Id. at ¶ 21.  On December 13, 2019, CNY sold the Vehicle for $14,000.00. Id. at ¶ 33. CNY used a portion of the Vehicle's sale proceeds to cover enforcement costs, including FJA's towing and storage fees. Alverio Decl., ¶¶ 28, 29. CNY delivered the remaining auction proceeds to owner of the Vehicle, Melande Chery. Id. at ¶ 29. MBFS has been unable to recover the Vehicle to date.  SMF, ¶ 36.

**III.    Damages**

CNY's refusal to release the Vehicle to MBFS in October of 2019 caused MBFS a loss of $14,000.00, the value of the Vehicle confirmed by CNY's actual selling price. SMF, ¶¶ 33, 34.

## LEGAL ARGUMENT

**I.    Summary Judgment is warranted where there are no *genuine* disputes of any *material* fact, and where Plaintiff is entitled to judgment as a matter of law.**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," see Fed. R. Civ. P. 56(a), and "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "[T]he mere existence of some alleged factual dispute… will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphases in original). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. A fact is material if it "might affect the outcome of the suit under the governing law." Id.

The opposing party "must do more than simply show that there is some metaphysical doubt… and may not rely on conclusory allegations or unsubstantiated speculation." Robinson v. Concentra Health Servs., Inc., 781 F.3d 42, 44 (2d Cir. 2015). The opposing party "may not survive summary judgment merely by conjuring a hypothetical issue of material fact." Id. Rather, the party opposing such a motion must come forward with some admissible proof that would require a trial of the material questions of fact on which its claims rest. Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177-78 (2d Cir. 1990).

**II.    CNY'S position as judgment creditor is subordinate to MBFS as a matter of law.**

CNY admits that its rights in the Vehicle are those of a judgment creditor. Alverio Decl., ¶ 9. The right to seize a vehicle for unpaid parking tickets derives from there being a judgment entered for such tickets which may be enforced as a civil money judgment under New York State CPLR Article

52. See V&T 237 (5); V&T 1806-A.  CPLR 5201(b) provides that a money judgment can be enforced against property only to the extent that the judgment debtor can assign or transfer it. Thus, the rule is well settled that a judgment creditor stands in the shoes of the judgment debtor and can obtain only what the judgment debtor actually owns. Swezey v Merrill Lynch, Pierce, Fenner & Smith Inc., 122 AD3d 489, 491 (1st Dept. 2014); Swezey v Lynch, 87 AD3d 119, 127 (1st Dept. 2011).

Consequently, when a judgment creditor seizes an asset that is subject to a valid, existing lien, the judgement creditor cannot deprive the existing lienholder of his rights.

> [T]he judgment creditor's...right to a given item of property is deemed coextensive with...the judgment debtor's...own interest in it. The theory is that the judgment creditor steps into the shoes of the judgment debtor. If the item is subject to any outstanding commitment… the judgment creditor is bound by it and can assert an interest in the item only to the extent that an interest remains after the commitment is subtracted. If the item is subject to a... contractual obligation... and the same is binding on the judgment debtor, it binds the judgment creditor as well.

O. P. M. Leasing Services, Inc. v Blue Cross and Blue Shield of Greater New York, 46 B.R. 661, 666 (Bankr. S.D.N.Y 1985).  When an agency that is enforcing a money judgment for parking tickets seizes a vehicle with a perfected lien on it, the agency takes the vehicle subject to the rights of the perfected lienholder and any related charges, costs or fees are subordinate to the perfected lien. Fitzpatrick v Bank of New York, 124 Misc.2d 732, 733 (1983) (holding that "[a] levy by the marshal cannot void a secured party's right to take possession of collateral... [as a] seizure by the marshal is subject to the perfected security interest already existing...") (emphasis added).

The perfected lienholder has the immediate right to possession upon default.  N.Y. U.C.C. § 9-603 (the parties to a security agreement may define default); NY UCC § 9-609(a)(1) (secured creditor may take possession upon default).  A secured party may exercise that right against a third-party in possession "who pay not refuse the secured party's request to turn over the collateral." SK Global America, Inc. v John Roberts, Inc., 6 AD3d 179, 180 (1st Dept. 2004).  Thus, Defendants' rights—if any—were subordinate to MBFS's possessory interests.  SMF, ¶¶ 10-11.

III.    **MBFS is entitled to judgment as a matter of law under 42 U.S.C. § 1983.**

Federal law provides a cause of action against any person acting under color of law who "subjects. . . any citizen of the United States . . . to the deprivation of any rights. . . secured by the Constitution . . . ." 42 U.S.C. § 1983.  There are "two—and only two—allegations" required: that a person has deprived a plaintiff of a federally protected right, and that said person acted under color of state law.  Gomez v. Toledo, 446 U.S. 635, 640 (1980).  In addition, for a municipal entity (like CNY), a plaintiff must allege that a municipal policy or custom was the "moving force" behind the violation.  City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989). (discussing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 693-94) (2000).

A.    **Defendants deprived MBFS of constitutionally protected property interests in the Vehicle.**

The Second Circuit has clarified that "[a] security interest is indisputably a property interest protected by the Fourteenth Amendment."  Ford Motor Credit Co. v. CNY Police Dep't, 503 F.3d 186, 191 (2d Cir. 2007); see also Mennonite Bd. of Missions v. Adams, 462 U.S. 791 (1983).  A secured creditor has both the "contractual right to repayment of the debt owed **and** the property right to the collateral that secures the debt," specifically, in the "present value of a seized vehicle." Id.  Therefore, a municipality's "delays impair Ford Motor Credit's *property* right, which is in the collateral itself—the seized vehicle."  Id. (emphasis in original) (citations omitted).

A lienholder's rights also include access to and repossession of its collateral, as defined in its security agreement and guaranteed by statute[1] See NY UCC §§ 9-603; 9-609; see also Santander Consumer USA, Inc. v. Cnty. of Suffolk, No. 20-CV-2656(JS)(AKT), 2021 WL 4480574, at *10

---

[1] New York law defines MBFS's property rights. Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972) ("Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law").

(E.D.N.Y. Sept. 30, 2021) (noting that a "lienholder's right in the present value of" a vehicle may be "transformed into a present possessory right to the [vehicle], whether by default or breach of relevant financing agreements," although the right had not been pled in that case).  Booting deprives a lienholder of its access to its vehicle collateral. Saukstelis v. City of Chicago, 932 F.2d 1171, 1172 (7th Cir. 1991) ("immobilization is a form of deprivation").  A government seizure which denies a lienholder access to its collateral is therefore actionable as a deprivation of a protected property interest.

Towing a vehicle away and detaining it behind a locked gate where no access is permitted deprives the lienholder of access to its collateral. Barnett v. Harwood, 189 F.3d 297, 300 (2d Cir. 1999).  CNY's detention of the Vehicle upon demand for payment of enforcement (towing and storage fees) created a *de facto* lien which also deprived MBFS of its property right, *i.e.* its lien priority, by subordinating MBFS's lien to its own monetary claims.  See, e.g., Connecticut v. Doehr, 501 U.S. 1 (1991) ("our cases show that even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection."); Mays v. Scranton City Police Dept., 503 F. Supp. 1255, 1258 (M.D. Pa. 1980) ("the *de facto* creation of a mechanic's lien for towing and storage charges without notice or an opportunity for a hearing constituted a deprivation of property without due process"). As one District Court recently found:

> Honda's lien over the Accord was a protected property interest.... Aston's seizure and retention of the car impaired Honda's property interests, however, depriving Honda of the collateral for its lien while the collateral's value steadily depreciated. [Aston's towing contractor] Luongo's towing and storage fees also impaired Honda's interest by effectively subordinating the priority of the Company's lien.

Am. Honda Fin. Corp. v. Twp. of Aston, 546 F.Supp.3d 371, 379 (E.D. Pa. 2021); see also, Santander Consumer USA, Inc. v. Cnty. of Nassau, ---F.Supp.3d---, 2022 WL 3647281, at *8 (E.D.N.Y. Aug. 24, 2022) ("delays and conditions for release can interfere with a lienholder's

property interest in collateral and its ability to enforce a lien").  "If the property is seized, the deprivation would be final" where "[t]he ordinance deals with the seizure (or re-arranging) of private property."  Price v. City of Junction, Tex., 711 F.2d 582, 590 (5th Cir. 1983).  But even if the deprivation of MBFS's rights was not permanent, "it is now well settled that a temporary, nonfinal deprivation of property is nonetheless a 'deprivation'. . ." of property.  Fuentes v. Shevin, 407 U.S. 67, 85 (1972); see also Doehr, 501 U.S. at 11-12. MBFS has a protectible right.

**B.    Defendant's Deprived MBFS Of The Federal Right to Due Process Guaranteed By The Fourteenth Amendment.**

A Fourteenth Amendment claim has two elements: (1) whether there is a protected property interest, and (2), "whether the procedures attendant upon that deprivation were constitutionally sufficient."  Kentucky Dept. of Corrs. v. Thompson, 490 U.S. 454, 460 (1989).  MBFS satisfies the first stage, see § III(A), *supra*, and Defendants' no-hearing policy does not satisfy the second.

**i.    *Notification of unilateral demands is not constitutionally appropriate notice.***

CNY's first communication to MBFS was a *notification*, not a notice, because it merely informed MBFS that CNY asserted "You are responsible to pay…," not notice *of a hearing*.  See MBFS Decl., Ex. C.  "The purpose of notice... is to apprise the affected individual of... an impending 'hearing.'  Notice... does not comport with constitutional requirements when it does not advise . . . of the availability of a procedure for protesting" the governments' actions.  Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 14-15 (1978).  A policy that does not have a hearing, and a policy of sending unilateral demands by mail, cannot possibly involve adequate notice.  Id. at 14 ("notification procedure, while adequate to apprise [property owner] of the threat... was not 'reasonably calculated' to inform them of the availability of 'an opportunity to present their objections'")(quoting Mullane v. Central Hanover Trust Co., 339 U.S. 306, 314 (1950); see also Butler v. Castro, 896 F.2d at 698, 703 (2d Cir. 1990) (finding a policy of failing to publish

procedure for hearing, and failing to send notice informing property owner of procedure for hearing, violated due process); Nassau, 2022 WL 3647281, at *9 n.11 (policy that precludes ability to "contest the conditions of release or the towing company's assertion of a lien.... affords the plaintiff no process, let alone due process").  Since neither CNY's notification nor any other publicly available information informed MBFS of a procedure for challenging the loss of its property (either the Vehicle or its money), Defendants violated the notice portion of due process.

### ii.      *The absence of any hearing is* **per se** *unconstitutional.*

CNY admits it has no procedure for any hearing for lienholders in conjunction with its Boot and Tow Program.  See SMF at ¶¶ 26, 27. FJA makes the same admission. Id. This admission is fatal to the constitutional validity of the Boot and Tow Program, as concerns lienholders. HVT, Inc. v. Port Auth. of NY & NJ, No. 15-cv-5867(MKB)(VMS), 2018 WL 3134414, at *11 (E.D.N.Y. Feb. 15, 2018), R&R Adopted, WL 1409821 (E.D.N.Y. Mar. 21, 2018) ("this Court concludes that this concession is fatal to the constitutional validity of Defendant's policy."). "[I]ndividuals must receive notice and opportunity to be heard before the Government deprives them of property." United States v. James Daniel Good Real Prop., 510 U.S. 43, 48 (1993) (citing Mathews v. Eldridge, 424 U.S. 319, 348-49 (1976)).  The government must set up a hearing regardless of the expected outcome.  Fuentes, 407 U.S. at 87. All Courts to have considered the process due when a vehicle is seized have uniformly required notice and a hearing.  See Propert, 948 F.2d at 1332; see also; HVT, Inc., 2018 WL 3134414, at *9 ("[T]he question is whether Defendant can summarily deprive Plaintiff of its property without any opportunity for a hearing. The law is quite clear that it cannot.").

### iii.      *CNY was required to provide a hearing* <u>*before*</u> *imposing deprivation on MBFS.*

CNY's failure to provide a hearing *at all* is particularly egregious because the law required a hearing to occur before effecting the deprivation upon MBFS.  Zinermon v. Burch, 494 U.S. 113,

132 (1990).  A post-deprivation hearing is sufficient only in situations that are "truly unusual" and involve a "special need for prompt action." <u>Fuentes</u>, 407 U.S. at 90-91.

Denying possession of a vehicle to lienholders to coerce payment of parking fines <u>owed by an entirely different person</u> does not create a "truly unusual" situation or a "special need for prompt action."  It is debatable whether withholding a vehicle solely to coerce payment is proper *at all*. <u>Harrell v. City of New York</u>, 138 F. Supp. 3d 479, 494 (S.D.N.Y. 2015).  Therefore, CNY was required to provide a hearing *before* issuing its ultimatum, and certainly before auctioning the Vehicle.  Notably, ***CNY does not involve lienholders in the parking ticket issuance or adjudication***, meaning there is no due process for lienholders regardless of whether the process is appropriate for owners.  <u>DCFS USA, LLC v. D.C.</u>, 803 F. Supp. 2d 29, 43 (D.D.C. 2011) (in discussing the need to separately notify lienholders, stating "[i]t can hardly be said that the necessity of a quick sale of the Vehicle justified the District's failure to provide DCFS pre-deprivation notice and hearing.").

The first notification that CNY gives lienholders comes after the vehicle has already been seized, and merely informs the lienholder of unilaterally imposed release conditions.  When MBFS responded to that notice by seeking to recover the Vehicle, due process required CNY to afford MBFS an opportunity for a hearing before asserting charges and before selling the vehicle.

   *iv.*  ***As to Lienholders, the boot and tow program fails the <u>Mathews</u> test.***

A no-hearing policy fails the <u>Mathews</u> balancing test *per se*.  <u>See</u> § III(B)(ii), *supra*.  Nevertheless, each of the <u>Mathews</u> factors confirms that Defendants' policy violates due process. <u>Mathews</u>, 424 U.S. 319 at 335. The three factors are (1) "the private interest that will be affected," (2) "the risk of an erroneous deprivation. . . through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens"

of additional procedures. Id.

As to the first Mathews factor, MBFS's financial interest in the Vehicle was substantial. See § III(A); c.f. James Daniel Good Real Prop., 510 U.S. at 54 (owner of leased home had an interest that "weigh[ed] heavily in the *Mathews* balance").

As to the third Mathews factor, the interests to be weighed here—Defendants *holding* the Vehicle until Defendants' conditions for release are met, and disregard of lienholder interests if those conditions were not met—are minimal or nonexistent and involve using detention of the Vehicle to ransom payment of the costs of enforcing the Boot and Tow Program. See Bell v. Burson, 402 U.S. 535, 540 (1971) (government interest in security for desired payments is minimal); Matthias v. Bingley, 906 F.2d 1047, 1054 (5th Cir. 1990) (government has no legitimate interest in destroying property that can be returned to a claimant); cf. Harrell, 138 F. Supp. 3d at 494 (finding the seizure of vehicles to secure payment of fines where the agency had no statutory forfeiture authority unconstitutional); Rosemont Taxicab Co. v. Philadelphia Parking Auth., 327 F. Supp. 3d 803, 824 (E.D. Pa. 2018) (finding Fourth and Fourteenth Amendment violations in detention of taxis until owners paid fines). Neither Defendant has offered any legitimate government interest justifying these policies.[2]

As to the second Mathews factor, the risk could not possibly be higher because there are currently *no* procedural safeguards to prevent erroneous deprivations from Defendants' *ex parte* actions. James Daniel Good Real Prop., 510 U.S. 43 at 55 ("The practice of *ex parte* seizure, moreover creates an unacceptable risk of error") There is no review of Defendants' impositions of

---

[2] The Defendants' interest to be weighed here is *not* the general goal of parking ticket enforcement, but rather the "specific interest" in using a lawfully seized vehicle as a hostage to coerce lienholders into complying with their demands. James Daniel Good Real Prop., 510 U.S. 43 at 56.

conditions for release, and no review of Defendants' unilateral decision regarding whether a claimant has complied with those conditions. No neutral reviews Defendants' refusal to release a vehicle to a lienholder or the decision to sell a particular vehicle. Everything is done based upon the Defendants' unilateral demands, which is the epitome of *ex parte*.

At least one erroneous deprivation is *guaranteed every single time* a lienholder seeks to recover a seized vehicle, because CNY's policy violates New York law on a lienholder's repossession rights and the priority between CNY and MBFS. See §II, *supra*. Moreover, the revenue-raising entailed the Boot and Tow Program creates an astronomical risk of abuse, as the 5th Circuit recognized nearly 50 years ago:

> Few procedures. . . are more likely to encourage such miscarriages than this one; a unilateral statement taken from one party that another party owes him money is accepted as a true and enforceable obligation, and that other party is never allowed to challenge the accuracy of the amount claimed.

Morgan v. Wofford, 472 F.2d 822, 827 (5th Cir. 1973). This is exactly what happens under CNY's Boot and Tow Program. James Daniel Good Real Prop., 510 U.S. 43 at 56 (neutral review is "of particular importance here, where the government has a direct pecuniary interest in the outcome…")

Accordingly, the application of the Mathews test confirms that the Boot and Tow Program violates due process as to lienholders.

### v. Defendants are required to have a neutral review their actions regardless of the expected outcome, and regardless of a request for one.

The Supreme Court has confirmed that the government must set up a hearing regardless of the expected outcome. "The right to be heard does not depend upon an advance showing that one will surely prevail at the hearing," because "[t] o one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process of law would have led to the same result." Fuentes, 407 U.S. 67 at 87 (citation and quotation

14

omitted). Rather, "[s]eizure of property without prior hearing has been sustained only where the owner is afforded prompt post-seizure hearing at which the person seizing the property must at least make a showing of probable cause." Stypmann v. City & Cty. of San Francisco, 557 F.2d 1338, 1344 (9th Cir. 1977) (collecting cases).

Defendants are required to have a neutral arbiter review their determination that a vehicle could be denied to a lienholder. McClendon v. Rosetti, 460 F.2d 111, 116 n.4 (2d Cir. 1972) ("It seems to me a shocking thing that our police can seize a citizen's property and then when he seeks to get it back challenge him to prove his title to the satisfaction of a jury.") (citation omitted); see also Frier v. City of Vandalia, Ill., 770 F.2d 699, 701 (7th Cir. 1985) (holding that after an automobile is towed the government must "tender an opportunity for a hearing; it may not sit back and wait for the aggrieved person to file a suit."); Draper v. Coombs, 792 F.2d 915, 923 (9th Cir. 1986) (finding the City of Portland violated due process because it did not provide an opportunity for a hearing, before or after towing); Krimstock v. Kelly, 306 F.3d 40, 50 (2d Cir. 2002) (holding the government must hold a prompt, post-seizure hearing to justify continued detention); Santander Consumer USA, Inc. v. City of Yonkers, No. 20-CV-4553 (KMK), 2022 WL 4134718, at *9 (S.D.N.Y. Sept. 12, 2022) (rejecting municipalities' argument that due process had been satisfied by vehicle owner's ability to *request* a hearing). They did not, and violated due process.

### vi.    *Defendants cannot argue that MBFS should have parted with another form or property—money—to regain possession of the Vehicle.*

Due process is not satisfied by forcing MBFS to relinquish one form of property— money—in exchange for another—its collateral, the Vehicle. Fuentes, 407 U.S. at 80. Defendants' imposition of a *de facto* possessory lien for enforcement, towing and storage charges while prohibiting MBFS from recovering the Vehicle triggered the need for additional process. Doehr, 501 U.S. at 12 ("[O]ur cases show that even the temporary or partial impairments to property rights

that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection.").

Every court to have considered the issue has rejected the practice of holding a Vehicle to secure payment, without any hearing on the legitimacy of the alleged charges or continued detention of the Vehicle.  For example, forty-two years ago, one District Court accurately said this practice faced the holder of an interest in the Vehicle with "the proverbial Hobson's choice:  he must pay the charges assessed . . . or forfeit his car," but "[u]nder either alternative, the owner is compelled to relinquish his personal property. . . without an opportunity to dispute the loss." Craig v. Carson, 449 F. Supp. 385, 395 (M.D. Fla. 1978); see also Am. Honda Fin. Corp. v. City of Revere, 471 F. Supp. 3d 399, 405 (D. Mass. 2020) (finding violative of due process an arrangement where a municipality "does not reimburse the garages" and, instead, the garage "profits from the sales."); Henry v. City of Middletown, Ohio, 655 F. App'x 451, 464 (6th Cir. 2016) ("[A] City's custom and practice of disposing of vehicles seized under these circumstances and not claimed by payment... without offering any post-impoundment process, violates Due Process.").  One district court—in a similar factual scenario involving different substantive law—called the argument "absurd" that a wronged party should be forced to pay storage fees to the wrongdoer to rescue its improperly-withheld property.  Adenariwo v. Fed. Mar. Comm'n, 808 F.3d 74, 79 (D.C. Cir. 2015).

If the procedures are "merely of a fait accompli" because "assessment of charges . . . [and] the creation of a lien against the car for those charges . . . are all final, unilateral, irrebuttable, and unalterable actions," then there has been no due process.  Craig, 449 F. Supp. at 395.

### vii.    *Summary of the point*

Lienholders are not included in CNY's parking ticket issuance or the adjudication of those tickets, rendering the process provided for owners irrelevant. The Boot and Tow Program does not

afford lienholders an opportunity to participate in CNY's decision making at any point, yet, the Boot and Tow program deprives lienholders of several significant and federally protected rights. MBFS was only notified of the situation after the vehicle was seized and impounded at FJA. After seizure, the only way MBFS would stop CNY's deprivation of its rights was to obey CNY's ultimatum. Requiring unquestioning obedience to government dictates is not due process.

**C.    Defendants deprived MBFS of a federal right when it unreasonably seized the Vehicle.**

The Fourth Amendment of the United States Constitution prohibits unreasonable seizures. See U.S. Const. amend. IV. There is no debate that booting and towing a vehicle is a seizure[3] which interfered with and denied MBFS access to its collateral, the Vehicle.  At the time of the seizure, MBFS's lien had already ripened into a present possessory right by virtue of a default on the under the terms of the contract and security agreement held by MBFS.  See SMF ¶ 10.

"[S]eizures of personal property are 'unreasonable within the meaning of the Fourth Amendment,' without more, 'unless. . . accomplished pursuant to a judicial warrant. . . .'" Illinois v. McArthur, 531 U.S. 326, 330 (2001) (quoting United States v. Place, 462 U.S. 696, 701 (1983)).

The scope of a money judgment CNY obtains is limited to those persons who have been adjudicated to be debtors. While CNY had a judgment which allowed CNY to interfere with the owner's rights, CNY does not claim it had a warrant or judicial order equivalent of a warrant that allowed it to interfere with lienholders' rights, including MBFS, by detaining the Vehicle against MBFS's wishes. Indeed, under New York law, CNY's rights were ***inferior*** to MBFS and

---

[3] Defendants interfered with possessory interests in the Vehicle by taking it from the street.  United States v. Jacobsen, 466 U.S. 109, 113 (1984) ("[a] 'seizure' of property occurs when there is some meaningful interference with the individual's possessory interest in that property."); Almeida v. Holder, 588 F.3d 778 (2nd Cir. 2009) (Meaningful interference includes interference with the right to exclude others from the property).

Defendants could not lawfully refuse to turn over the Vehicle to MBFS.  See § II, *supra*.  Thus, for analysis of MBFS's rights, there was no warrant, or, alternatively, CNY exceeded the scope of the warrant it did have.  Frein v Pennsylvania State Police, 47 F.4th 247, 252 (3rd Cir. 2022) (finding that while valid warrants may justify a seizure, "they are not blank checks," and the Fourth Amendment is violated by actions beyond a warrant's scope).

There are limited exceptions to the warrant requirement.  Id.  An otherwise lawful warrantless seizure "can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition. . . ." Jacobsen, 466 U.S. at 113; see also Illinois v. Caballes, 543 U.S. 405, 407 (2005).

The analysis, then, is whether the Defendants' warrantless activity in continuing a seizure against the interest of MBFS fell within a recognized exception, Harrell, 138 F. Supp. 3d at 488, and whether the manner of execution of that warrantless seizure was reasonable, Jacobsen, 466 U.S. at 113.  Neither are the case here.

### i.    There is no exception to the warrant requirement for debt collection

CNY's policy is to force payment of a vehicle owner's debt and enforcement expenses by holding seized vehicles, including the Vehicle, to (a) utilize the hardship of seizure to force the lienholder to pay enforcement, towing and storage fees, and (b) as leverage to pressure compliance by threatening sale of the vehicle.  No Court has found that debt collection is an exception to the warrant requirement. Quite the opposite.  As stated in Harrell:

> There is no question that regulating vehicles . . . is a legitimate exercise of police power. But summary deprivation of property is not. The City has powerful, legitimate tools at its disposal. It could subject these vehicles to forfeiture… it could impose substantial late fees for owners who do not pay the fines…. What it cannot do, consistent with the Fourth Amendment, is summarily seize property... and hold the property as leverage to ensure payment....

138 F. Supp. 3d at 492.  See see also United States v VERTOL H21C, Reg. No. N8540, 545 F.2d 648, 651 (9th Cir. 1976) (noting that the government may not "summarily take property as a security"); Rosemont Taxicab, 327 F. Supp. 3d at 822 ("[s]eizing a taxicab solely as surety for the payment of fines that possibly may be assessed for a violation of [a municipality's] regulations" violated the Fourth Amendment.").

   ii.    *Regardless of whether CNY's initial seizure was reasonable, the manner of execution of that seizure violated the Fourth Amendment*

Absent a lawful justification, "retention of seized property runs afoul of the Fourth Amendment." Krimstock, 306 F.3d at 50.[4]  In this regard, a seizure which is lawful at its inception may nevertheless violate the Fourth Amendment where the manner of its execution is unreasonable and exceeds the scope of any legitimately necessary interference.

CNY's practice of retaining vehicles to force lienholders to pay enforcement, towing and storage fees separately violated the Fourth Amendment. "[The Government] has... the duty to

---

[4] Although now-Justice Sotomayor directly said the Fourth Amendment could be violated by "retention" in the Krimstock case, there are some seemingly inconsistent holdings from the Second Circuit.  See, e.g., Shaul v. Cherry Valley-Springfield Cent. Sch. Dist., 363 F.3d 177, 187 (2d Cir. 2004) ("unlawful retention was too 'novel' a theory to warrant Fourth Amendment protection…") (citing Lee v. City of Chicago, 330 F.3d 456, 461-65 (7th Cir. 2003)).  However, the Supreme Court resolved this issue as to liberty interests in Manuel v. City of Joliet, Ill., 137 S. Ct. 911, 919 (2017), finding the Fourth Amendment had as much relevance to detention as to an original arrest.  Manuel expressly overruled a line of Seventh Circuit cases—the same Circuit from which Shaul borrowed the "novel" line first appearing in the Lee case—calling the Seventh Circuit an "outlier" in this regard. Manuel, 137 S. Ct. at 917.  Manuel thus also implicitly resolved this apparent conflict as to detentions of property, as the Court has also said there is no "support... for a categorical distinction between a deprivation of liberty and… property." Zinermon v. Burch, 494 U.S. 113, 132 (1990).  There is also no true disagreement between Shaul and Krimstock, because Shaul involved a reasonable seizure resulting in *accidental loss* of property the government intended to return, ***not*** intentional detention accompanied by conditions for release. Shaul, 363 F. 3d at 184 ("The reasonableness standard must be satisfied both at the inception of [the] intrusion and throughout its scope.")  The Seventh Circuit itself later distinguished Lee. United States v. Burgard, 675 F.3d 1029, 1032 (7th Cir. 2012) (stating "[a] seizure reasonable at its inception… may become unreasonable as a result of its duration" while stating "we reject the notion that anything in this court's opinion in Lee... undermined [that] holding.").

return the contested property... regardless and independently of the validity or invalidity of the underlying search and seizure." United States v. Wilson, 540 F.2d 1100, 1104 (D.C. Cir. 1976); see also Manuel v. City of Joliet, Ill., 137 S. Ct. 911, 919 (2017) (finding Plaintiff's "ensuing pretrial detention, no less than his original arrest, violated his Fourth Amendment rights."). Here, CNY's use of its control over the Vehicle to force the lienholder to pay for enforcement, towing and storage fees violated the Fourth Amendment regardless of whether its initial seizure or detention was otherwise lawful.

For example, "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." Caballes, 543 U.S. at 408. Similarly, even where the initial seizure of a package was not unreasonable, the Supreme Court has required and analyzed an additional and separate justification for destroying a portion of the contents of the package (by doing a drug test), stating destructive test "converted what had been only a temporary deprivation of possessory interest into a permanent one." Jacobsen, 466 U.S. at 124. And in Rodriguez, the Supreme Court found that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures" when the police required a stopped vehicle to wait an extra *eight minutes* for an unrelated "dog-sniff." Rodriguez v. United States, 575 U.S. 348, 350 (2015); see also United States v. Cardona-Sandoval, 6 F.3d 15, 23 (1st Cir. 1993) (noting that a seizure's scope must comport with the reason for the seizure, and that an initially valid seizure does not "provide[] carte blanche to destroy" the item seized).

In a similar case, the Court has directed Suffolk County to stop placing conditions on its release of vehicles which it decides not to subject to forfeiture. Fasciana v. County of Suffolk, 996 F. Supp. 2d 174, 181 (E.D.N.Y. 2014) (stating the "[r]elease of the Vehicle *is not contingent on*

*any condition, agreement, or circumstance*. . . . such a contingency would render Krimstock a nullity") (emphasis added).  Other courts have found that indefinite detentions following a seizure violated the Fourth Amendment.  See Hines v. City of Albany, 542 F. Supp. 2d 218, 232 (N.D.N.Y. 2008) (finding Plaintiff adequately pled a Fourth Amendment unreasonable seizure claim where defendants were alleged to have "seized [the plaintiff's] vehicle without a warrant, retained possession of the vehicle for over one year despite repeated requests for its return, and failed to provide [the plaintiff] with a hearing."); see also Nassau, 2022 WL 3647281, at *7 and *9, n.11 (although the court "assume[d] without deciding" that plaintiff did not have a possessory interest, stating that "the Boot and Tow Policy violates the Fourth Amendment rights of those who have a present possessory interest" by requiring payment and other conditions for release); Toyota Lease Trust v. Village of Freeport, 20-cv-02207(DG)(SIL), Dkt. No. 62, Rept. & Recom. (E.D.N.Y.  Jan. 24, 2023) (finding that "continued retention… is a separate Fourth Amendment violation" in relation to a similar parking enforcement policy in a litigation brought by a lessor with present possessory rights).

CNY's assertion of a *de facto* lien, and demand that MBFS satisfy it, was completely unrelated to the legitimate reason CNY had to seize the Vehicle which was to force the owner to pay the owner's judgments and expenses. Accordingly, the seizure was unreasonable in its manner of execution, violating the Fourth Amendment.

**D.    CNY Deprived MBFS of the Federal Right to be free from Uncompensated Takings**

The Fifth Amendment requires just compensation for governmental takings of private property for public purposes. Even a temporary taking requires payment of just compensation. United States v Pewee Coal Co., 341 U.S. 114 (1951)

The Supreme Court has recognized that governmental action rendering liens unenforceable for public purpose is an actionable taking. See Armstrong v. United States, 364 U.S. 40, 46 (1960)

(holding that a valid Takings Clause claim lay where plaintiffs' liens remained in effect but were unenforceable against the collateral following forfeiture).  MBFS need not have availed itself of any particular state law or local remedy before pursuing a Federal Fifth Amendment takings claim. <u>Knick v. Township of Scott</u>, 139 S. Ct. 2162, 1267-68 (2019) ("A property owner has an actionable Fifth Amendment taking claim when the government takes his property without paying for it."). In a case involving CNY's similar refusal to provide lienholders a hearing while holding vehicles for forfeiture—which CNY lost 16 years ago—the Court stated that "***were this a Takings Clause case***, Ford Motor Credit might well be entitled to the value of its security interest as of the time the City seized the vehicle."  <u>Ford Motor Credit</u>, 503 F.3d at 191 (emphasis added).[5]

Recently, the Third Circuit held that a Section 1983 complaint "checks all the Fifth Amendment boxes" where it alleged that private property was subject to an *initially* valid seizure to enforce State law, but detained beyond any legitimate reason to do so without being returned or paid for. <u>Frein</u>, 47 F. 4th at 251.

MBFS's claim clearly checks all of these boxes as well.  MBFS held a private property interest in the Vehicle as collateral which included the right to enforce its lien by recovering possession of the Vehicle from CNY. <u>See</u> § II, *supra*. CNY held the Vehicle in "constructive custody" (SMF, ¶ 15) thereby taking control over MBFS's property interest and rending MBFS's lien unenforceable. <u>Armstrong</u>, 364 U.S. at 46. CNY insists that its actions concerning the Vehicle were necessary to enforce its public function of parking management, meaning it took private property to pay for public expenses. The taking of the Vehicle as against MBFS's rights was used

---

[5] It is reasonable to assume <u>Ford Motor Credit</u> had simply not pursued a Takings Clause claim, because, at the time, <u>Knick</u> had not yet removed the requirement that a Takings plaintiff exhaust state court remedies.  Nonetheless, the Second Circuit discussed Takings Clause jurisprudence, including <u>Armstrong</u>, and its discussion is a strong indication that post-<u>Knick</u>, it would also find a Takings Clause violation.

for the express purpose of paying for towing and storage services that CNY needed in order to fulfill its public function of enforcing State law in parking enforcement.

CNY's actions temporarily rendered MBFS's private property (lien) unenforceable and did not compensate MBFS. While the time period of the temporary taking was short (seizure on October 10, 2019 to sale on December 13, 2019) the consequences were severe as it resulted in the direct loss of MBFS' legal right to recover the Vehicle which had a value of $14,000. But for CNY's taking of MBFS's lien rights, MBFS would have recovered the Vehicle and realized that $14,000 value for itself.  Instead, CNY extracted that value from the Vehicle to pay for its boot-and-tow parking enforcement program.

**E.    CNY and FJA's Actions were all Taken under Color of Law.**

Section § 1983 liability attaches to actions taken under color of law.  Both CNY's actions and FJA's were taken under color of law.  The fact that FJA is an independent contractor is irrelevant.  West v. Atkins, 487 U.S. 42, 55-56 (1988).  Sub-contracting "does not relieve the State [or CNY] of its constitutional duty" to respect constitutional rights in the handling of seized vehicles.  Id.  CNY also could not knowingly accept the benefit of FJA's conduct—*i.e.* FJA providing CNY otherwise free services—and wash its hands of the consequences.  Burton v. Wilmington Parking Auth., 365 U.S. 715 (1961).

Here, the symbiotic relationship between CNY and FJA is admitted. FJA admits that it will not release a vehicle under the Boot and Tow Program unless CNY authorizes it to do so. FJA was literally and figuratively the gatekeeper of the Boot and Tow Program. Thus, the actual harm to MBFS, the physical denial of possession of its vehicle collateral, was guaranteed by FJA.

In exchange, CNY extended the mantle of its authority to both protect and profit FJA. Specifically, CNY executed "constructive custody" over the Vehicle and refused to authorize release of the Vehicle unless MBFS first paid the towing and storage fees incurred by FJA.  CNY's

maintenance of "constructive custody" over the Vehicle through FJA set in motion a chain of events[6] that led to the wrongful detention of the vehicle from MBFS and the eventual sale of the Vehicle.  Johnson v. Bradshaw, 772 F. Supp. 501, 505 (D. Nev. 1991), aff'd, 5 F.3d 537 (9th Cir. 1993) (finding deprivation where "without notice to [plaintiff], it [the vehicle] was given by the police department to a third party."); Hernandez v. European Auto Collision, Inc., 487 F.2d 378, 383 (2d Cir. 1973) (finding a non-judicial sale of a vehicle under New York State Lien Law to be "repugnant to the due process clause of the Fourteenth Amendment. . . .").

A Massachusetts District Court found a very similar arrangement as that between CNY and FJA to be unconstitutional when sanctioned by a state statute in Massachusetts:

> Revere does not reimburse the garages for any uncompensated losses, so by the time the Vehicle is sold, the sale proceeds are the only source of compensation and reimbursement available to garage owners. As a result, the garages treat the profits from the sales [of the Vehicles it tows] as reimbursement for their towing jobs.

Am. Honda Fin. Corp, 471 F. Supp.3d at 405.  Other courts have found *both* the tow company *and* the government liable under similar circumstances. Stypmann, 557 F.2d at 1341 ("[T]he private towing company is a willful participant in a joint activity with the State or its agents…"); Smith v. Insley's Inc., 499 F.3d 875, 880 (8th Cir. 2007) ("Insley's [towing company] was acting under color of state law in towing, storing, and selling [a] vehicle"); Foster v. City of Philadelphia, No. CIV.A. 12-5851, 2014 WL 5821278, at *22 (E.D. Pa. Nov. 10, 2014) ("Century Motors is a state actor for § 1983 purposes. . . ."); Tedeschi v. Blackwood, 410 F. Supp. 34, 41 (D. Conn. 1976)

---

[6] Without the mantle of CNY's authority, FJA would have been committing a crime when it took someone else's vehicle and held it without consent. See, e.g., N.Y. Penal Law § 165.05 (making it a crime where "[k]nowing that he does not have the consent of the owner," a person "takes, operates, exercises control over, rides in or otherwise uses a vehicle.").  Of course, FJA was not committing a crime because of CNY's involvement.

(stating the conclusion was "inescapable" that "the defendants (including Road Aid, of course) acted 'under color of law.'").

**F.**    **There is no genuine dispute that CNY is liable under _Monell_, because CNY's policies and customs were the "moving force" behind the deprivations.**

"Since this case unquestionably involves official policy as the moving force of the constitutional violation," namely CNY's Boot and Tow Program, there is no genuine dispute as to CNY's liability.  <u>Monell</u>, 436 U.S. at 694.  CNY and FJA both admitted that they followed standard procedures as to the Vehicle under the Boot and Tow Program. SMF at ¶ 31.

**IV.    MBFS's Damages**

**A.    Actual Damages**

42 U.S.C § 1983 creates a species of tort liability where the damages are measured by reference to State tort law.  <u>City of Monterey v. Del Monte Dunes at Monterey, Ltd.</u>, 526 U.S. 687 (1999) (the court interprets "the statute in light of the background of tort liability.");  <u>Carey v Piphus</u>, 435 U.S. 247, 257-58 (1978) (stating that "the common law of torts" is the "starting point for the inquiry under § 1983").

The most similar tort to the combination of the three constitutional violations at issue here is the tort of conversion,[7] the remedy for which includes "the value. . . at the time and place of the conversion," **_and_** "any further pecuniary loss of which the deprivation has been a legal cause" and "not otherwise compensated." Restatement (Second) of Torts § 927 (1979).[8]

---

[7] MBFS does **_not_** need to prove the separate element of this tort.  The purpose here is to determine the appropriate measure of damage **_after_** the Court has determined liability under 42 U.S.C. § 1983, **_not_** add elements to MBFS's substantive 42 U.S.C. § 1983 claim.

[8] MBFS could, but here does not, also make a claim for the additional uncompensated loss of use of its Vehicle, which it would have sold and reinvested in a finance contract.  The Second Circuit has already found such loss-of-use damages could be measured by the monthly lease payments. <u>Koninklijke Luchtvaart Maatschaapij, N. V. v. United Techs. Corp.</u>, 610 F.2d 1052, 1055-56 (2d Cir. 1979).

The Second Circuit has already determined that a lienholder has a right to the value of its vehicle collateral which has been denied to it. Ford Motor Credit, 503 F.3d at 191. CNY admits that it sold the Vehicle for $14,000.00. SMF, ¶ 33. This actual sale price establishes the Vehicle's value. Thus, MBFS would have recovered the $14,000.00 value of the Vehicle if CNY had released it to MBFS instead of denying it to MBFS under its unconstitutional practices. Ford Motor Credit, 503 F.3d at 191. Thus, MBFS's actual damages are $14,000.00.

**B.    Nominal Damages**

"[T]he denial of procedural due process should be actionable for nominal damages without proof of actual injury." Piphus, 435 U.S. at 266.

**V.    MBFS's Request For Declaratory Relief.**

As the Southern District stated in 2002:

> To guide the district courts in exercising the broad discretion the DJA confers, several tests and considerations have been recognized and generally applied. One articulation holds that a court may properly render declaratory judgment (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.

Dow Jones & Co. v. Harrods, Ltd., 237 F. Supp. 2d 394, 432 (S.D.N.Y. 2002), aff'd, 346 F.3d 357 (2d Cir. 2003). Here, CNY's "Boot and Tow" policy, along with the manner it compensates FJA through the parties' ongoing contract (through Paylock), creates an ongoing controversy every time the Defendants seize a vehicle subject to a lien. MBFS brought this action to require CNY to "afford greater due process protections to lienholders whose vehicles" CNY and FJA have "seize[d] and impound[ed]," and, as recently held by the Eastern District of Pennsylvania, "[g]iven the frequency with which vehicles are leased or purchased on credit (with a lien usually provided to the financing entity), this is not an obscure issue." Aston, 546 F.Supp.3d at 373.

26

Therefore, the declaration of the parties' respective rights will guide CNY in formulating a policy that is ***not*** violative of lienholders' constitutional rights and would settle this ongoing issue.  The Court can and should issue a declaration of the parties' respective rights in this case, declaring unconstitutional the policy of (a) not obtaining a warrant or judicial order (involving the lienholder) before refusing a lienholder's request to recover a seized vehicle; (b) not providing for any hearing (to lienholders) before or after a seizure, and (c) not compensating lienholders when vehicle are taken and sold to generate proceeds for payment of parking ticket judgments.

## <u>CONCLUSION</u>

CNY admits that it does not afford lienholders the due process requisite of an opportunity to be heard when it deprives lienholders of their rights under CNY's Boot and Tow Program.

Instead of affording lienholders the opportunity to participate in its decisions, CNY issues an ultimatum: pay all costs of enforcement (including towing and storage fees) and provide a release of liability, or you are not getting the vehicle. This dictatorial approach is antithetical to the DNA of this Nation and contrary to the Second Circuit's holding in <u>Ford Motor Credit</u> that lienholders must be afforded constitutional safeguards when the government interferes with rights in vehicle for law enforcement purposes. CNY offers no explanation for its refusal to incorporate fundamental constitutional safeguards for lienholders into its Boot and Tow Program. None can be given. CNY's no-hearing policy is decades out of touch with basic constitutional jurisprudence. It needs to change. As to the lienholders, the Boot and Tow Program runs afoul of the Fourth, Fifth and Fourteenth Amendments. FJA, for its part, voluntarily, and for its own profit, participated in and actively furthered CNY's unconstitutional activities, and is therefore jointly liable with CNY for MBFS' damages.

MBFS therefore respectfully requests that this Court enter an order granting partial summary judgment on Counts I, II, and III against all Defendants, awarding damages in the amount of $14,000.00, entering the requested declaratory relief.


Dated: May 19, 2023

**NORRIS McLAUGHLIN P.A.**
*Attorneys for Plaintiff, Mercedes-Benz Financial Services USA, LLC*

By: ___*/s/ Nicholas Duston*_____
        Nicholas A. Duston, Esq.