UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MERCEDES-BENZ FINANCIAL SERVICES USA, LLC

                            *Plaintiff*,

        v.

THE CITY OF NEW YORK and FIVE J'S AUTOMOTIVE LTD.,

                            *Defendants*.

21-CV-3908 (VSB)

**MEMORANDUM OF LAW IN SUPPORT OF THE CITY OF NEW YORK'S CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

HON. SYLVIA O. HINDS-RADIX
Corporation Counsel of the
  City of New York
Attorney for City of New York
100 Church Street
New York, NY 10007
Tel: (212) 356-2183

Karen Selvin,
Edward Murray,
Samantha Schonfeld
        *of Counsel*

June 21, 2023

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................... iii

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS ...................................................................................... 3

    The City's Process for Adjudicating Tickets for
    Parking and Camera Violations ................................................................... 3

    The City's Scofflaw Program ....................................................................... 4

    Scofflaw Enforcement Against Vehicle No. 793 ......................................... 5

LEGAL STANDARD .............................................................................................. 7

ARGUMENT

    POINT I

    CITY DEFENDANT IS ENTITLED TO
    SUMMARY JUDGMENT ON PLAINTIFF'S DUE
    PROCESS CLAIM .......................................................................................... 8

        1.   Plaintiff's Interest in the Vehicle ............................................... 9

        2.   Risk of Erroneous Deprivation .................................................. 10

            a.  Pre-Seizure Process ......................................................... 11

            b.  Post-Seizure Process ........................................................ 13

        3.   Governmental Interest ................................................................ 19

        4.   Adequate Notice ......................................................................... 20

    POINT II

    CITY DEFENDANT IS ENTITLED TO
    SUMMARY JUDGMENT ON PLAINTIFF'S
    FOURTH AMENDMENT CLAIM ................................................................. 22

POINT III

      CITY DEFENDANT IS ENTITLED TO
      SUMMARY JUDGMENT ON PLAINTIFF'S
      FIFTH AMENDMENT TAKINGS CLAIM ........................................... 26

POINT IV

      CITY DEFENDANT IS ENTITLED TO
      SUMMARY JUDGMENT ON PLAINTIFF'S
      MONELL CLAIM .................................................................................... 28

POINT V

      CITY DEFENDANT IS ENTITLED TO
      SUMMARY JUDGMENT ON FJA'S CROSS
      CLAIM FOR INDEMNIFICATION ........................................................ 28

CONCLUSION ............................................................................................................... 30

## TABLE OF AUTHORITIES

**Cases**                                                                   **Pages**

Am. Honda Finance Corp. v. City of Revere,
    471 F. Supp. 3d 399
    (D. Mass. 2020)...................................................................8, 14, 21

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)....................................................................7

Bennett v. Dutchess County New York,
    832 F. App'x 58 (2d Cir. 2020) ...................................................25

Bourne v. Dep't of Finance,
    36 Misc. 3d 120(A)
    (Sup. Ct., Kings Cty. 2012).........................................................17

Bt. Holdings v. Village of Chester,
    670 F. App'x 17 (2d Cir. 2016) ...................................................26

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)....................................................................7

City of Los Angeles v. Heller,
    475 U.S. 796 (1986)...................................................................28

Coleman v. County of Suffolk,
    685 F. App'x 69 (2d Cir. 2017) ...................................................28

Elmsford Apartment Associates, LLC v. Cuomo,
    20-CV-4062 (CM), 2020 U.S. Dist. LEXIS 115354
    (S.D.N.Y. June 29, 2020)........................................................26, 27

Fitzpatrick v. Bank of New York,
    124 Misc. 2d 732
    (App. Term, 2d Dep't 1983) .......................................................17

Flaherty v. Filardi,
    03-CV-2167, 2007 WL 163112
    (S.D.N.Y. Jan. 24, 2007)............................................................16

Ford Motor Credit v. New York City Police Dep't,
    503 F.3d 186 (2d Cir. 2007)..............................................8, 9, 10, 12, 18

Frien v. Pennsylvania State Police,
    47 F.4th 247 (3d Cir. 2022) .....................................................27, 28

**Cases**                                                                    **Pages**

Frier v. City of Vandalia, Illinois,
    770 F.2d 699 (7th Cir. 1985) ............................................................................10

Gerte v. Borough of Naugatuck,
    19-CV-1511 2021 U.S. Dist. LEXIS 57972
    (D. Conn. Mar. 26, 2021) .................................................................................25

Harrell v. City of New York,
    138 F. Supp. 3d 479
    (S.D.N.Y. 2015) ........................................................................................12, 24

Henry v. City of New York,
    638 F. App'x. 113 (2d Cir. 2016) ....................................................................16

HVT, Inc. v. Port Auth.,
    2018 U.S. Dist. LEXIS 27132
    (E.D.N.Y. Feb 15, 2018) ..............................................................................8, 14

Krimstock v. Kelly,
    306 F.3d 40 (2d Cir. 2002) ..............................................................................10

Locurto v. Safir,
    264 F.3d 154 (2d Cir. 2001) ............................................................................15

Manza v. Newhard,
    915 F. Supp. 2d 638
    (S.D.N.Y. 2013) ........................................................................................15, 20

Mathews v. Eldridge,
    424 U.S. 319 (1976) ..........................................................................................8

Matican v. City of New York,
    524 F.3d 151 (2d Cir. 2008) ............................................................................28

McCahey v. L.P. Investors,
    774 F.2d 543, 552-553 (2d Cir. 1985) ............................................................14

McClendon v. Rosetti,
    460 F.2d 111 (2d Cir. 1972) ............................................................................10

Memphis Light, Gas & Water Div. v. Craft,
    436 U.S. 1 (1978) ........................................................................................9, 15

Mincey v. Arizona,
    437 U.S. 385 (1978) ........................................................................................22

**Cases**                                                                           **Pages**

Morgan v. Wofford,
   472 F.2d 822 (5th Cir. 1973) ................................................................13

New York State NOW v. Pataki,
   261 F.3d 156 (2d Cir. 2001).................................................................17

Nnebe v. Daus,
   931 F.3d 66 (2d Cir. 2019)........................................................8, 10, 19

Olim v. Wakinekona,
   461 U.S. 238 (1983)..............................................................................13

Palazzolo v. Rhode Island,
   533 U.S. 606 (2001)..............................................................................26

Palumbo v. Provident Trust Grp., LLC,
   6:19-CV-0252 (LEK/ATB), 2021 U.S. Dist. LEXIS 53882
   (N.D.N.Y. Mar. 23, 2021)........................................................................7

Pierre v. New York City Taxi & Limousine Comm'n,
   2017 U.S. Dist. LEXIS 60419
   (S.D.N.Y. Apr. 19, 2017)........................................................................16

Prop. Clerk of the Police Dep't of the City of New York v. Harris,
   9 N.Y.3d 237 (2007) .............................................................................10

Prop. Clerk v. Molomo,
   81 N.Y.2d 936 (1993) ................................................................9, 10, 18

Rackley v. City of New York,
   186 F. Supp. 2d 466
   (S.D.N.Y. 2002) ...............................................................12, 13, 19, 22, 23

Santander Consumer USA, Inc. v. City of Yonkers,
   2022 U.S. Dist. LEXIS 164416
   (S.D.N.Y. Sept. 12, 2022)......................................................................21

Santander Consumer USA, Inc. v. County of Nassau,
   2022 U.S. Dist. LEXIS 152268
   (E.D.N.Y. Aug. 2022)...........................................................9, 12, 14, 24

Santander Consumer USA, Inc. v. County of Suffolk,
   2021 U.S. Dist. LEXIS 188881
   (E.D.N.Y. Sept. 30, 2021)......................................................18, 20, 24

**Cases**                                                                                      **Pages**

Santander Consumer USA, Inc., v. Port Auth. of New York & New Jersey,
     20-CV-1998 (MKB), 2022 U.S. Dist. LEXIS 138986
     (E.D.N.Y. Aug. 4, 2022) ...............................................................................22, 23, 25

SK Global Am., Inc. v. John Roberts, Inc.,
     6 A.D.3d 179 (1st Dep't 2004) ...................................................................................17

Stahl York Ave. Co., LLC v. City of New York Landmarks Pres. Comm'n,
     641 F. App'x 68 (2d Cir. 2016) ............................................................................13, 20

Sysco Metro NY, LLC v. City of New York,
     59 Misc. 3d 727
     (Sup. Ct., N.Y. Cty. 2017) .........................................................................................11

Tahoe—Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,
     535 U.S. 302 (2002).....................................................................................................26

Thevenin v. Cooper,
     2020 U.S. Dist. LEXIS 267098
     (E.D.N.Y. Aug. 14, 2020)...........................................................................................28

Torres v. City of New York,
     590 F. Supp. 3d 610
     (S.D.N.Y. 2022) ..........................................................................................................12

Tsinberg v. City of New York,
     20-CV-749 (PAE) (SLC), 2021 U.S. Dist. LEXIS 13408
     (S.D.N.Y. Jan. 22, 2021).............................................................................................23

United States v. James Daniel Good Real Prop.,
     510 U.S. 43 (1993)..................................................................................................14, 19

United States v. Weaver,
     9 F.4th 129 (2d Cir. 2021) ..........................................................................................22

Wilson v. Parking Violations Bur. Sheriff's Off.,
     2010 N.Y. Misc. LEXIS 2804
     (Sup. Ct., N.Y. Cty. June 18, 2010) ............................................................................17

Yu Juan Sheng v. City of New York,
     2009 U.S. Dist. LEXIS 129813
     (E.D.N.Y. 2009).....................................................................................................12, 23

Zinermon v. Burch,
     494 U.S. 113 (1990)......................................................................................................9

**Cases**                                                                                                                    **Pages**

**Statutes**

19 R.C.N.Y. § 39-01 ................................................................................................................11

| **Statutes** | **Pages** |
|---|---|
| 19 R.C.N.Y. § 39-01 <u>et seq.</u> | 3 |
| 19 R.C.N.Y. § 39-08 | 11 |
| 19 R.C.N.Y. § 39-10(g) | 4 |
| 19 R.C.N.Y. § 39-12 | 11 |
| 42 U.S.C. § 1983 | 1 |
| C.P.L.R. § 52 | 11, 13, 14, 21 |
| C.P.L.R. § 78 | 2, 3, 16 |
| C.P.L.R. § 5239 | 11 |
| C.P.L.R. § 5240 | 4 |
| C.P.L.R. § 8011 | 14, 19 |
| C.P.L.R. § 8012 | 14, 19 |
| C.P.L.R. § 8013 | 14, 19 |
| C.P.L.R. § 8013(c) | 27 |
| Fed. R. Civ. P. 26(a)(1)(A)(i) | 16 |
| Fed. R. Civ. P. 37(c)(1) | 16 |
| Fed. R. Civ. P. 56 | 1 |
| Fed. R. Civ. P. 56(a) | 7 |
| Local Rule 56.1 | 3, 27 |
| N.Y.C. Admin. Code § 19-200 <u>et seq.</u> | 3 |
| N.Y.C. Admin. Code § 19-201 | 3 |
| N.Y.C. Admin. Code § 19-203(e) | 4 |
| N.Y.C. Admin. Code § 19-212 | 2, 4, 22, 24, 26 |
| N.Y.C. Charter § 1504(4) | 3 |
| N.Y. Tax Law § 1105(c)(3) | 27 |

| **Statutes** | **Pages** |
| --- | --- |
| N.Y. Tax Law § 1105(c)(6) | 27 |
| V.T.L. § 1111-a | 3 |
| V.T.L. § 1111-c | 3 |
| V.T.L. § 1180-b | 3 |
| V.T.L. § 235(2)(c) | 4 |
| V.T.L. § 237(5) | 2, 4, 22, 24, 26 |
| V.T.L. § 241(2) | 4 |

## PRELIMINARY STATEMENT

Defendant, the City of New York ("City"), submits this memorandum of law in support of its cross-motion for summary judgment and in opposition to Plaintiff's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Plaintiff, a vehicle lienholder, brings this action pursuant to 42 U.S.C. § 1983, based on alleged violations of the Fourth, Fifth and Fourteenth Amendments, arising from the seizure of a vehicle by the New York City Department of Finance ("DOF") to satisfy outstanding parking violation judgments incurred by the vehicle owner.

Plaintiff primarily asserts that the City's practice of seizing vehicles to satisfy judgment debt fails to provide a lienholder with the "due process protection of the opportunity for a hearing at a meaningful time and manner." <u>See</u> Pl. Memorandum of Law in Support of its Motion for Summary Judgment, dated May 19, 2023 ("Pl. Memo") (ECF No. 45) at 1. Plaintiff further asserts that defendants violated the Fourth Amendment when they initially seized the vehicle without a warrant and continued to hold the vehicle until Plaintiff paid the requisite fees. Finally, Plaintiff asserts that the vehicle seizure constituted a taking whereby defendants deprived it of its property without just compensation.

As detailed herein, the City's procedures relating to the vehicle seizure satisfy procedural due process. The City provided to Plaintiff timely notice of the seizure that outlined the steps for retrieving the vehicle and the availability of a proceeding to deny or modify the use of any of the City's judgment enforcement procedures. Following receipt of notice, and to protect its interest in the vehicle, Plaintiff requested and received from the City a stay of public auction of the vehicle until a specified date to have time to compile basic documents in its possession showing entitlement to the vehicle and to pay applicable fees, including for towing and storage, which it can ultimately recover from the vehicle owner. Plaintiff obtained a release from the City to retrieve

the vehicle, but thereafter failed to take any further action to retrieve the vehicle by the date on which the sales hold expired. Accordingly, the City auctioned off the vehicle, subject to Plaintiff's lien, in accordance with state law. The City clearly afforded Plaintiff adequate process to protect its interests in the vehicle. To the extent the release issued by the City to Plaintiff to retrieve the vehicle required Plaintiff to pay the outstanding parking violation judgment prior to retrieving the vehicle, the requirement was inconsistent with City policy and thus unauthorized. But such an error does not amount to a procedural due process violation because Plaintiff had an adequate remedy in the form of a summary proceeding under Article 78 of the New York Civil Practice Law and Rules ("CPLR").

Plaintiff's Fourth Amendment claim fails as the vehicle seizure was authorized by statute. New York Vehicle and Traffic Law ("VTL") Section 237(5) and New York City Administrative Code ("Administrative Code" or "Admin. Code") Section 19-212 authorize the City's seizure of vehicles in satisfaction of parking violation judgments exceeding $350.00. Of note, Second Circuit precedent clearly establishes that warrantless vehicle seizures by the government in these circumstances are reasonable under the Fourth Amendment.

Plaintiff's takings claim also fails as the Vehicle was seized to satisfy a judgment-debt owed by the vehicle owner, which is specifically authorized by statute. Additionally, it bears noting that Plaintiff could have retrieved the vehicle at any time by submitting the requisite paperwork establishing its interest in the vehicle and paying applicable fees. Its failure to do so does not constitute a taking by the City.

Finally, Defendant Five J's Automotive Ltd. ("Five J's" or "FJA") is asserting a cross-claim for indemnification against the City. Because there is no contract between the City

and FJA providing for indemnification and because FJA provides no support for its claim, FJA's cross-claim is without merit.

Accordingly, and for the reasons discussed below, the City is entitled to summary judgment dismissing the Complaint and cross-claim because the asserted claims for relief are either without a basis in law or not supported by any facts.

## STATEMENT OF FACTS

### The City's Process for Adjudicating Tickets for Parking and Camera Violations

DOF's Parking Violations Bureau ("PVB") adjudicates tickets issued for parking violations and violations of the bus lane camera, speed camera and red light camera laws. See City Defendant's Local Rule 56.1 Statement ("Def. St."), ¶ 5; New York City Charter § 1504(4); Admin. Code § 19-201; VTL §§ 1111-a, 1111-c, and 1180-b. The City affords ticket recipients the opportunity to contest the tickets at an administrative hearing and administratively appeal adverse determinations to an appeals board, whose determinations constitute a final determination subject to judicial review in proceeding under Article 78 of the Civil Practice Law and Rules ("CPLR"). See generally Admin. Code §§ 19-200 et seq.; Rules of the City of New York ("RCNY"), Title 19, § 39-01 et seq.

If a ticket recipient fails to respond to a ticket, either by pleading guilty and paying the associated fine or contesting the ticket, DOF sends multiple notices to the registered vehicle owner, specifically, a "Notice of Outstanding Summons," a "Notice of Impending Default Judgment," and a final notice informing the owner that a default judgment has been entered and that the vehicle is subject to seizure if the resulting judgment is over $350. Def. St. ¶¶ 10, 12; See Declaration of Samantha Schonfeld, dated June 21, 2023 ("Schonfeld Dec.,") Ex. D, ¶¶ 6-7.

PVB is empowered "[t]o enter judgments and enforce them, without court proceedings, in the same manner as the enforcement of money judgments in civil actions in any

court of competent jurisdiction or any other place provided for the entry of civil judgments within the state of New York." VTL § 237(5). See also VTL §§ 235(2)(c), 241(2); Admin. Code § 19-203(e); 19 RCNY § 39-10(g). Upon the entry of judgment, the registrant of the vehicle with judgments becomes a judgment-debtor of DOF. Def. St. ¶ 14; See Schonfeld Dec., Ex. D, ¶ 9.

**The City's Scofflaw Program**

The City is authorized to seize vehicles from any street or public area to satisfy outstanding judgments against the vehicle owners for parking violations totaling more than $350. See Admin. Code § 19-212. The City seizes vehicles to obtain payment of the judgment debt or to sell the vehicles to satisfy the debt from the proceeds of the sale. Def. St. ¶¶ 16-17; Schonfeld Dec., Ex. D, ¶ 9.

To initiate the vehicle seizures, DOF issues an Execution to the City Sheriff and Marshal. Def. St. ¶ 19; Schonfeld Dec., Ex. D, ¶11; Schonfeld Dec., Ex. E at CNY 99-100. The Execution contains notice that, under CPLR § 5240, a "court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure." Def. St. ¶ 20; Schonfeld Dec., Ex. E at CNY 100.

Within four days of a vehicle being towed to a tow pound, the City Sheriff or City Marshal sends notice of the seizure and a copy of the execution to interested parties, including lienholders, by certified mail, return receipt requested, or by first class mail with certificate of mailing. Def. St. ¶ 21; Schonfeld Dec., Ex. D, ¶ 13. The standard notice sent to the lienholder states that the vehicle will be sold at public auction no sooner than ten days from the date of the letter and that in order to retrieve the vehicle, the lienholder must first contact DOF to obtain the required release, and second, pay the applicable fees. Schonfeld Dec., Ex. D, ¶¶ 15-16; Schonfeld Dec., Ex. F at CNY 51.

A lienholder can obtain the required release by providing proof of entitlement to the vehicle, namely, through a contract between the lienholder and vehicle owner and a copy of the notice of lien. Def. St. ¶ 24; Schonfeld Dec., Ex. D, ¶ 19. DOF also requires that the lienholder provide a hold harmless letter that indemnifies and holds harmless the City for claims arising out of the release of the vehicle. Id.; Schonfeld Dec., Ex. G at CNY 16. Upon receipt and review of the required documents, DOF will issue a "Notice to Release" to the lienholder that will contain instructions for retrieving the vehicle, such as payment of applicable fees. Def. St. ¶ 27; Schonfeld Dec., Ex. D, ¶ 24; Schonfeld Dec., Ex. H at CNY 56.

Fees are set by contract and statute and serve to cover the cost of the program. See Schonfeld Dec., Ex. D, ¶ 25, fn. 7. Fees include a booting fee, towing fee, storage fees, a Sheriff or Marshal execution fee, and poundage fee. Id.; Def. St. ¶ 28. As related to lienholders, the City does not require lienholders to pay the judgment debt, that is, the outstanding fines associated with the parking tickets that serve as the basis for the seizure. Def. St. ¶ 31; Schonfeld Dec., Ex. D, ¶ 8.

Any towed vehicle that is not claimed is sold at a public auction, subject to any liens or encumbrances that were placed on the vehicle by the City. Def. St. ¶ 34; Schonfeld Dec., Ex. D, ¶ 26. Vehicles sold at a public auction are "subject to any or all recorded liens," which means that "**[a]ny vehicle with a lien may be subject to repossession by the lien holder."** See *Vehicle Auctions*, NYC Department of Finance, available at https://www.nyc.gov/site/finance/vehicles/services-auctions.page (last accessed on June 21, 2023) (emphasis in the original); Def. St. ¶ 35.

**Scofflaw Enforcement Against Vehicle No. 793**

On October 10, 2019, DOF issued an Execution authorizing the seizure of the Vehicle registered to Melande Chery ("Chery") who at the time, had judgment debt in excess of $350.00 due to violations for, among other things, double parking, parking in front of a fire

hydrant, and failure to display a muni meter receipt.. Def. St. ¶¶ 36-37; Schonfeld Dec., Ex. D, ¶ 11; Schonfeld Dec., Ex. E at CNY 99-100; Schonfeld Dec., Ex. I, at CNY 102-103. That same day, the City Marshal booted a 2015 Mercedes Benz bearing Vehicle Identification No. WDZPE8DC5F5995793 ("Vehicle No. 793"), and Five J's Automotive ("FJA") towed it to their tow pound.; Def. St.          ¶¶ 36-39; Schonfeld Dec., Ex. I at CNY 1, 102-103.

On October 11, 2019, the City Marshal sent the Standard Vehicle Seizure Notice to Plaintiff, who had a lien on Vehicle No. 793. Def. St. ¶ 41; Schonfeld Dec., Ex. D, ¶ 15; Schonfeld Dec., Ex. F at CNY 51. On October 31, 2019, at Plaintiff's request, DOF placed a "Sales Hold" on public auction of the Vehicle to provide Plaintiff with an opportunity to retrieve the Vehicle. Def. St. ¶ 43; Schonfeld Dec., Ex. D, ¶ 20.

Additionally, on October 31, 2019, DOF received from Plaintiff the required documents for release of Vehicle No. 793. Def. St. ¶ 44; Schonfeld Dec., Ex. D, ¶ 23; Schonfeld Dec., Ex. G at CNY 16-20. Thereafter, on November 6, 2019, DOF issued a Notice to Release to Plaintiff with instructions to collect "judgments, costs and fees."[1] Def. St. ¶ 45; Schonfeld Dec., Ex. H at CNY 56.

On December 4, 2019, since MBFS failed to recover the Vehicle prior to November 28, 2019, the date on which the Sales Hold expired, the City scheduled a public auction of the Vehicle to be held on December 13, 2019. Def. St. ¶ 47; Schonfeld Dec., Ex. I, at CNY 12.

On December 13, 2019, Vehicle No. 793 was sold at auction for $14,000.00, subject to MBFS's recorded lien. Def. St. ¶ 48; Schonfeld Dec., Ex. J at CNY 57. The outstanding judgments, costs and fees of the seizure, and auction costs were all subtracted from the sale price

---

[1] Pursuant to its vehicle seizure policy, the City does not require lienholders to pay the underlying judgment debt. See Schonfeld Dec., Ex. D, ¶ 8.

of $14,000.00 and all remaining auction proceeds were relinquished to the owner of Vehicle 793, Chery, upon proof of ownership. Def. St. ¶ 51; Schonfeld Dec., Ex. D, ¶ 29.

## **LEGAL STANDARD**

A party is entitled to summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Material" facts are facts that "might affect the outcome of the suit under the governing law," Anderson, 477 U.S. at 248, and a "genuine" dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Palumbo v. Provident Trust Grp. LLC, 6:19-cv-0252 (LEK/ATB), 2021 U.S. Dist. LEXIS 53882, *6-7 (N.D.N.Y. Mar. 23, 2021) (quoting Anderson, 477 U.S. at 248).

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Palumbo, 2021 U.S. Dist. LEXIS 53882, at *7. Similarly, the movant is entitled to summary judgment when the nonmoving party has failed "to establish the existence of an element essential to [the movant's] case, and on which [the movant] will bear the burden of proof at trial." Id. (quoting Celotex Corp., 477 U.S. at 322).

**ARGUMENT**

**POINT I**

**CITY DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S DUE PROCESS CLAIM**

To enforce procedural due process, a court must "first determine whether a property interest is implicated, and then, if it is, determine what process is due before the plaintiff may be deprived of that interest."  Nnebe v. Daus, 931 F.3d 66, 80 (2d Cir. 2019).

The City does not dispute that Plaintiff had an interest in the "present value" of the Vehicle that triggers due process protections.  Ford Motor Credit v. N.Y. City Police Dep't, 503 F.3d 186, 193 (2d Cir. 2007).  However, as the City provided Plaintiff adequate process to protect Plaintiff's interest, the City is entitled to summary judgment on Plaintiff's due process claim.

To determine what process is due, courts balance the following factors: "(1) 'the private interest that will be affected by the official action;' (2) 'the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards;' and (3) 'the Government's interest, including the . . . fiscal and administrative burdens that the additional or substitute procedural requirement[s] would entail.'"  Nnebe, 931 F.3d at 80 (citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).

As an initial matter, Plaintiff argues that application of these "Mathews factors" is not necessary because the City purportedly provides Plaintiff no process.  See Pl. Mem. at p. 11-12.  Plaintiff relies on HVT, Inc. v. Port Auth., 2018 U.S. Dist. LEXIS 27132, at *25 (E.D.N.Y. Feb 15, 2018), where the court declined to apply the Mathews factors because the governmental entity conceded that it provides "no hearing procedure, either before or after towing."  See also Am. Honda Fin. Corp. v. City of Revere, 471 F. Supp.3d 399 (D. Mass. 2020) (municipality seized vehicle and sold it off without providing notice to the lienholder and without recording the

lienholder's lien on the new title, effectively extinguishing lienholder's property interest). Here, however, the City is making no such concession, as Plaintiff is plainly incorrect that it was afforded no process. See Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 16 fn. 17 (1978) (stating that a "due process hearing" can be satisfied by an "opportunity for informal consultation with designated personnel"). Within four days of towing the Vehicle, the City sent notice to Plaintiff that included a letter outlining the steps for retrieving the Vehicle and a copy of the Execution. See Schonfeld Dec., Ex. D, ¶ 15. Following receipt of notice, and to protect its interest in the Vehicle, Plaintiff requested and received from the City a sales hold preventing public auction of the Vehicle to have time to compile basic documents in its possession showing entitlement to the Vehicle and to pay fees. See id., ¶ 20. Plaintiff thereafter obtained a release from the City to retrieve the Vehicle, but failed to take any further action to retrieve it by the date on which the sales hold expired. See id., ¶ 24, 27. Accordingly, the City auctioned off the vehicle, subject to Plaintiff's lien, in accordance with state law. See id., ¶ 27. Due process is a flexible standard that "varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). And in the particular situation raised in this case, the City's process more than meets this flexible standard. Application of the Mathews factors demonstrates as much.[2]

### 1. Plaintiff's Interest in the Vehicle

The City does not dispute that Plaintiff, as lienholder, had a "considerable" interest in the "present value" of the Vehicle. Ford Motor Credit, 503 F.3d at 193. A lienholder, however, does not have a "present possessory right" to a seized vehicle. Prop. Clerk v. Molomo, 81 N.Y.2d

---

[2] Indeed, in Santander Consumer USA, Inc. v. Cnty. of Nassau, 2022 U.S. Dist. LEXIS 152268, at *26, fn. 12 (E.D.N.Y. Aug. 2022) (hereinafter "Santander (Nassau Co.)"), Plaintiff's counsel, who served as counsel for Santander, stated on the record that Nassau County could satisfy due process by adopting a boot and tow program like the City's program at issue in this action.

936, 938 (1993). <u>See also</u> <u>Prop. Clerk of the Police Dept. of the City of New York v. Harris</u>, 9 N.Y.3d 237, 246 (2007) (referring to a lienholder's interest in a vehicle as a "contingent possessory interest"). Thus, in the forfeiture context, for example, the lienholder can "fully protect its interest" in a vehicle by receiving proceeds from the forfeiture sale and seeking any deficiency from the debtor. <u>Molomo</u>, 81 N.Y.2d at 938. Finally, a lienholder's interest is "not as great as the interest of the vehicle's owner in possession of a seized vehicle - - because seized vehicles are not used by [a lienholder] as 'a mode of transportation . . . [or] the means to earn a livelihood.'" <u>Ford Motor Credit</u>, 503 F.3d at 193 (citing <u>Krimstock v. Kelly</u>, 306 F.3d 40, 61 (2d Cir. 2002)).

### 2. Risk of Erroneous Deprivation

This second factor addresses "the risk of erroneous deprivation of" Plaintiff's interest in the present value of a vehicle "through the procedures used, and the probable value, if any, of additional or substitute safeguards." <u>Nnebe</u>, 931 F.3d at 80. This factor favors the City.

The City has standard procedures for interested parties to recover vehicles seized pursuant to an execution of judgment. As relevant here, these procedures provide for prompt notice to Plaintiff, allow Plaintiff to request a stay of sale of a seized vehicle, and require Plaintiff to submit basic documents in its possession showing entitlement to the vehicle, as well as a hold harmless letter, and to pay standard fees associated with towing and storing a vehicle (but not including judgment debt). <u>See generally</u> Schonfeld Dec., Ex. D. Contrary to Plaintiff's suggestion, the City is neither requiring Plaintiff to show proof of entitlement to seized vehicles "to the satisfaction of a jury," nor "sit[ting] back and wait[ing for Plaintiff] to file a suit" to retrieve them. <u>See</u> Pl. Mem. at p. 15 (citing <u>McClendon v. Rosetti</u>, 460 F.2d 111, 116 n.4 (2d Cir. 1972) and <u>Frier v. City of Vandalia, Ill</u>, 770 F.2d 699, 701 (7th Cir. 1985)). In fact, the City requires a hold harmless letter that covers "release" of a seized vehicle to the lienholder to allow for a quicker return of the vehicle, instead of requiring that a lienholder obtain a court order extinguishing the

vehicle owner's interest in the vehicle and/or authorizing the City to release the vehicle to the lienholder.[3]  See Schonfeld Dec., Ex. G, at CNY 16.  See also CPLR § 5239 ("Proceeding to determine adverse claims").  The City's clear policy is to release seized vehicles to lienholders that are entitled to them.  Moreover, Plaintiff can pursue a CPLR Article 52 proceeding to modify or even deny the City's use of any procedures relating to enforcement of the judgment.

### a. Pre-Seizure Process

To the extent Plaintiff is arguing pre-seizure process would better protect against a risk of erroneous deprivation, the value of any additional procedures would be negligible at best. Plaintiff emphasizes that the City "**does not involve lienholders in the parking ticket issuance or adjudication**."  Pl. Memo. at p. 12 (bold in the original).  That is true because Plaintiff does not have standing to contest parking tickets issued to a vehicle owner.  Plaintiff is not the recipient of the parking ticket, is not the actor who engaged in the purportedly illegal conduct, and is not responsible for associated fines, if any, either before or after judgment is entered.  See, e.g., 19 RCNY § 39-01 (defining "respondent" as the "person charged with a parking violation"); 19 RCNY §§ 39-08 and 39-12 (hearing and appeal rights of respondent); 19 RCNY § 39-12 (liability for fines and penalties).  See also Sysco Metro NY LLC v. City of New York, 59 Misc. 3d 727, 730-731 (Sup. Ct. N.Y. Co. 2017) (distinguishing between an interest in the adjudication of parking tickets and an actual injury that confers standing).  Additionally, a *potential* vehicle seizure is triggered only if a vehicle owner is guilty of multiple violations and fails to pay associated fines that total more than $350.  By not involving lienholders in parking ticket adjudications, likely

---

[3] A plain reading of the hold harmless letter that addresses "release" of a seized vehicle makes clear that the letter does not "absolve" the City "of all liability relative to its seizure of the vehicle[s]."  See Schonfeld Dec., Ex. G, at CNY 16; Pl. Mem. at p. 4.

hundreds of thousands per year of which do not trigger any possibility of a seizure, the City is posing no risk of erroneous deprivation of a lienholder's interest in the present value of a vehicle.

Contrary to Plaintiff's suggestion, there is also no obligation to provide process to Plaintiff either prior to issuance of an execution of judgment or prior to seizure. See Pl. Memo. at p. 12. Plaintiff is entitled to repossess the Vehicle for a default of the financing agreements. See Declaration of Madu Azubogu ("Azubogu Dec."), ¶ 9. Here, the vehicle owner was only in default of the financing agreements after the City seized the Vehicle to satisfy outstanding parking judgments. See id. Thus, Plaintiff had no right to repossess the Vehicle until the Vehicle was actually seized by the City, thus undermining Plaintiff's contention that it was entitled to pre-seizure notice and an opportunity to be heard.

Plaintiff's apparent claims about the need for additional safeguards prior to seizing a vehicle fail to make any distinction between the private interests of the vehicle owner and the lienholder, which are not one in the same. See Ford Motor Credit, 503 F.3d at 193. Because a vehicle owner has a greater interest in possession of a vehicle, as a mode of transportation or a means to earn a living, the City provides the vehicle owner extensive process prior to seizing a vehicle, a process that courts have long held comports with due process. See Torres v. City of New York, 590 F. Supp. 3d 610, 617 (S.D.N.Y. 2022) (citing cases); Yu Juan Sheng v. City of New York, 2009 U.S. Dist. LEXIS 129813, at *9 (E.D.N.Y. 2009) (holding that New York City's procedures for serving and filing summonses, and entering and enforcing judgments afford "adequate notice and an opportunity to be heard before [a] car [i]s seized"); Rackley v. City of New York, 186 F. Supp. 2d 466, 480 (S.D.N.Y. 2002). It is this pre-seizure process that distinguishes this case from both Harrell v. City of New York, 138 F. Supp. 3d 479, 494 (S.D.N.Y. 2015), and Santander (Nassau Co.), 2022 U.S. Dist. LEXIS 152268, at *13, where the

municipalities seized vehicles prior to the adjudication of the tickets or summonses that underlie the seizure. But simply because a lienholder also has an interest in a vehicle does not mean it is entitled to the same exact process as the owner. Such reasoning would ignore the different interests at stake. By arguing that due process requires additional procedures prior to a seizure, Plaintiff is treating procedures not as a "means," but as an "end in themselves," which is inconsistent with the purpose of due process. Rackley, 186 F.Supp.2d at 475. See also Stahl York Ave. Co., LLC v. City of N.Y. Landmarks Pres. Comm'n, 641 Fed. Appx. 68, 73 (2d Cir. 2016) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.") (citing Olim v. Wakinekona, 461 U.S. 238, 250 (1983)).

### b. Post-Seizure Process

With respect to post-seizure process, Plaintiff contends that the risk of erroneous deprivations "could not possibly be higher" because there is no "neutral review" of the City's imposition of, and lienholder's compliance with, release conditions or a hypothetical decision by the City to refuse to release vehicles to a lienholder or to auction them. Pl. Memo. at p. 13-14.

The City's procedures, however, do not compare to the risk identified in Morgan v. Wofford, 472 F.2d 822, 827 (5th Cir. 1973), where a due process violation stemmed from a criminal sentence requiring the defendant to pay, on threat of imprisonment, restitution to the victim in a conclusory amount declared by the victim without any judicial inquiry or adversary challenge. Here, by contrast, the calculation of fees is not based on an individual's exactitude or whim, but is instead based on standard rates that are uniformly applied and publicly available. See Schonfeld Dec., Ex. D, ¶ 25, fn. 7. See also *Towed Vehicles – Frequently Asked Questions,* NYC Department of Finance, available at: https://www.nyc.gov/site/finance/vehicles/services-towed-vehicles-faq.page (last accessed on June 21, 2023) ("What are the fees associated with towing?"). And unlike in Morgan, Plaintiff can pursue a CPLR Article 52 proceeding to challenge

the City's enforcement of the judgment. See <u>McCahey v. L.P. Investors</u>, 774 F.2d 543, 552-553 (2d Cir. 1985) (finding that an Article 52 proceeding affords debtor due process). The availability of an Article 52 proceeding was referenced in the Execution, a copy of which was provided to Plaintiff at the time it was notified of the seizure. See Schonfeld Dec., Ex. E at CNY 100.

Contrary to Plaintiff's claim, there is also little risk of abuse due to a purportedly pecuniary benefit to the City from Plaintiff's payment of fees or a refusal to release the vehicle to Plaintiff. Pl. Memo. at p. 14. The required fees, which include a Sheriff or Marshall execution fee, poundage fee, boot fee, towing fee, and storage fee are grounded in state law, cover basic costs of operating the City's program that are borne by the Sheriff or Marshal, the City's boot vendor, and the tow company. See Schonfeld Dec., Ex. D, ¶ 25, fn. 7; CPLR §§ 8011, 8012, and 8013. Under standard procedures, the City also does not require lienholders to pay judgment debt to recover vehicles. See Schonfeld Dec., Ex. D, ¶ 8. Thus, the pecuniary interest to the City, to the extent there is one, does not compare to the government's pecuniary interest in <u>United States v. James Daniel Good Real Prop.</u>, 510 U.S. 43, 54 (1993), resulting from the government's seizure of real property and ongoing receipt of rental payments from that property.

Plaintiff also fails to cite any case explicitly holding that due process requires a "neutral arbiter" to oversee the post-seizure process, including the City's vehicle release determinations. See Pl. Mem. at p. 15. The cases that Plaintiff cites that relate to lienholders only require that lienholders be afforded process. See, e.g., <u>Santander (Nassau Co.)</u>, 2022 U.S. Dist. LEXIS 152268, at *28; <u>Am. Honda Fin. Corp. v. City of Revere</u>, 471 F. Supp.3d 399, 409 (D. Mass. 2020); <u>HVT, Inc.</u>, 2018 U.S. Dist. LEXIS 27132, at *24. The City plainly provides Plaintiff process to protect its interests in the Vehicle. That this process is informal and undertaken by employees of the City's Department of Finance – the agency that adjudicates parking violations

and issues the execution of judgment – is of no moment.  As noted above, the Supreme Court stated that a "due process hearing" can be satisfied by an "opportunity for informal consultation with designated personnel."  Craft, 436 U.S. at 16 fn. 17.  Here, consistent with Craft, the City has designated employees to review parties' rights to a vehicle and, where appropriate, issue a release.  See also Locurto v. Safir, 264 F.3d 154 (2d Cir. 2001) (finding that a pre-termination hearing for public employees does not require a neutral adjudicator); Manza v. Newhard, 915 F. Supp. 2d 638, 648 (S.D.N.Y. 2013) (informal meetings with mayor regarding water bills satisfied due process).

As described above, the City has a process in place that provides lienholders with timely notice of the seizure and that allows lienholders to obtain timely release of a vehicle.  Here, Plaintiff does not contest that such process was followed and that it received timely notice and was provided the opportunity to retrieve the vehicle in an expedited fashion. Plaintiff obtained a release from the City to retrieve the Vehicle, but thereafter failed to take any further action to retrieve it by the date on which the sales hold expired.  See Schonfeld Dec., Ex. D, ¶¶ 24, 27.  Accordingly, Plaintiff's reference to a hypothetical situation where a vehicle is held "hostage" by the City so as to impose and coerce compliance with arbitrary demands is just that – a hypothetical with no relevance to the instant proceeding.  See Pl. Memo. at p. 13, fn. 2.

The release issued to Plaintiff, which was completed by a City employee, indicated that Plaintiff was to pay the vehicle owner's judgment debt of $366 to retrieve the Vehicle.[4] See Schonfeld Dec., Ex. H, at CNY 56. This requirement was imposed in error, as the City's policy is to release vehicles to lienholders without requiring payment of the judgment debt. See id., Ex. D, ¶ 8.; *Towed Vehicles – Frequently Asked Questions,* NYC DEPARTMENT OF FINANCE, available at: https://www.nyc.gov/site/finance/vehicles/services-towed-vehicles-faq.page (last accessed on June 21, 2023) ("What identification and documentation must I have to get my vehicle back?"). This error, however, does not amount to a procedural due process violation because it was a random and unauthorized act that can be remedied in a CPLR Article 78 proceeding.[5] See Henry v. City of New York, 638 Fed. Appx. 113 (2d Cir. 2016) (dismissing due process claim where plaintiff alleged only that defendants did not comply with prescribed procedures and plaintiff can pursue Article 78 review); Pierre v. N.Y. City Taxi & Limousine Comm'n, 2017 U.S. Dist. LEXIS 60419, at *9-10 (S.D.N.Y. Apr. 19, 2017) (construing a failure by a City agency to implement its rules as a random deprivation of plaintiff's rights that can be remedied in an Article 78 proceeding).

---

[4] Through an August 2022 declaration by Maurice Propersi, Plaintiff offers a fantastical story about M&M Towing and Recovery, LLC, Plaintiff's alleged towing vendor, abandoning recovery of the Vehicle over the $366. See Declaration of Maurice Propersi, annexed as Exhibit H to Azubogu Dec. Propersi, an M&M employee, was not identified in Plaintiff's initial disclosures or even referenced in any of Plaintiff's interrogatory responses as a person with discoverable information. See Schonfeld Dec., Ex. K and Ex. L. See also FRCP 26(a)(1)(A)(i). Plaintiff's "Account Notes" make no reference to any attempts by M&M to recover the Vehicle. See Azubogu Dec., Ex. D, at MBFS_000015. Plaintiff's hold harmless letter submitted to the City authorizes three individual drivers to pick up the vehicle, not one of whom is Propersi. See Schonfeld Dec. Ex. G, at CNY 16. Plaintiff offers no payment receipt from Paylock that M&M was required to obtain *before* going to the tow pound to pick up the Vehicle. See id., Ex. I, at CNY 48. And records maintained by the City and Paylock make no reference to any payment and cancelation of payment by M&M relating to the Vehicle. See id., Ex. I, at CNY 12, 101-118. The Court should disregard, if not strike, the Propersi Declaration in its entirety, as well as statements in the Azubogu Declaration (¶¶ 16, 18) and Plaintiff's 56.1 statement (¶ 21) that cite to it. See FRCP 37(c)(1). See also Flaherty v. Filardi, No. 03-CV-2167, 2007 WL 163112, at *4 (S.D.N.Y. Jan. 24, 2007) (stating that a court may "decline to consider those aspects of a supporting affidavit that do not appear to be based on personal knowledge or are otherwise inadmissible") (citation and internal quotation marks omitted).

[5] It is conceivable that Plaintiff could have even remedied the error by contacting the DOF, but Plaintiff failed to pursue this route as well, which suggests that recovery of the Vehicle likely fell through the cracks of Plaintiff's business operations.

See also Wilson v. Parking Violations Bur. Sheriff's Off., 2010 N.Y. Misc. LEXIS 2804 (Sup. Ct., N.Y. Co. June 18, 2010) (ordering release of towed vehicle); Bourne v. Dept. of Fin., 36 Misc. 3d 120(A) (Sup. Ct., Kings Co. 2012) (challenging the City's decision to seize and auction a vehicle). Accordingly, this Mathews factor "weighs dispositively in favor of" the City. See also N.Y. State NOW v. Pataki, 261 F.3d 156, 168 (2d Cir. 2001).

Finally, Plaintiff brazenly contends there is an erroneous deprivation "*every single time*" it seeks to recover a vehicle from the City because its security interest in vehicles is superior to the City's interest in the vehicles as a judgment creditor. Pl. Memo. at p. 14. Plaintiff thus appears to be making the claim that due process provides Plaintiff, as a secured creditor, the right to immediate repossession of a seized vehicle at its verbal command and an exemption from paying any and all "charges, costs or fees" associated with the City's program. Id. at p. 7-8. Plaintiff cites no case law to support this extraordinary claim. Instead, Plaintiff cites to Fitzpatrick v. Bank of N.Y., 124 Misc. 2d 732, 733 (App. Term, 2d Dep't 1983), to establish that the City's vehicle seizures do not void Plaintiff's liens. See Pl. Memo. at p. 7. Plaintiff also relies on SK Global Am., Inc. v. John Roberts, Inc., 6 A.D.3d 179, 180 (1st Dep't 2004), which states in relevant part:

> [A] secured party's right to possession of collateral upon default may be asserted against a third party in possession, and that party in possession may not refuse the secured party's request to turn over the collateral. At the very least, the party in possession should seek judicial direction before disposing of the disputed proceeds. Once the party in possession receives notice of an outstanding right of possession by a secured creditor, it becomes a stakeholder as to the disputed proceeds.

See Pl. Memo. at p. 7. The City does not necessarily dispute the general propositions stated in Fitzpatrick or SK Global, as is demonstrated by the fact that the City issued a release for the Vehicle to Plaintiff upon receipt of proof that Plaintiff was in fact entitled to possession of them. It is also demonstrated by the fact that the City sold the Vehicle, subject to Plaintiff's lien. See

Schonfeld Dec., Ex. J, at CNY 57.  See also *Vehicle Auctions*, NYC DEPARTMENT OF FINANCE, available at https://www.nyc.gov/site/finance/vehicles/services-auctions.page (last accessed on June 21, 2023).  But neither case states or even suggests that the City turn over a seized vehicle to any entity that simply asserts that it is has a secured interest in the vehicle without requiring in return *any* evidence of the existence of that security interest.  And neither case states or even suggests that Plaintiff should be exempt from paying any fees to retrieve the Vehicle.

As noted above, lienholders do not have a "present possessory interest" in a seized vehicle, but rather they have an interest in a vehicle's present value.  Ford Motor Credit, 503 F.3d at 193. See also Santander Consumer USA, Inc. v. Cty. of Suffolk, 2021 U.S. Dist. LEXIS 188881, at *6 (E.D.N.Y. Sept. 30, 2021) (hereinafter "Santander (Suffolk Co.)") (finding that the lienholder could not state a procedural due process claim against a county's vehicle seizure policy because it did not have a present possessory right to the seized vehicles).  At least in the forfeiture context, lienholders can protect this interest by receiving proceeds from a forfeiture sale and seeking any deficiency from the debtor.  Molomo, 81 N.Y.2d at 938.  If due process is satisfied in such a manner in the forfeiture context, then it does not follow that Plaintiff is constitutionally immune from the City's procedures here, where the lienholder is able both to recover a vehicle in an expeditious manner and recover repossession costs from the vehicle owner.  See Schonfeld Dec., Ex. G., at CNY 19 (Section 4).

Additionally, it should be emphasized that this Mathews factor concerns the risk of "erroneous deprivation" of property, and not deprivation of the best deal a financing company can squeeze out of the City.  Plaintiff's preferred "procedure" of recovering seized vehicles at its verbal command, if adopted, would surely pose a high risk of erroneous deprivation of the vehicle owner's property interest.  The City's current procedure, on the other hand, balances competing

interests of vehicle owner and lienholder by requiring that the lienholder provide basic documentary evidence that it is actually entitled to possession of a vehicle.  With respect to Plaintiff's requested immunity from fees, a vehicle sitting in a tow pound is a cost that someone must bear. If all lienholders were deemed constitutionally immune from paying for such costs, which are based in state law and often accrue based on a request by the lienholder to stay public auction of a vehicle, the ongoing viability of a program designed to promote compliance with the City's laws would be severely threatened.  See CPLR §§ 8011, 8012, and 8013.  The City's procedures incentivize timely recovery of vehicles, but in no way impair Plaintiff's ability to recover from the vehicle owner repossession costs.  Plaintiff's procedural immunity argument runs counter to law and policy and should be rejected.

### 3. Governmental Interest

The final Mathews factor considers the City's interest, "including the fiscal and administrative burdens that the additional or substitute procedural requirement[s] would entail." Nnebe, 931 F.3d at 80 (internal citations omitted).  This factor also favors the City.

The City's scofflaw program serves important government interests, including securing compliance with and deterring violations of parking regulations, an interest that encompasses concerns about public safety and a "desire to alleviate congestion in a traffic-clogged City." Rackley, 186 F.Supp.2d at 478.  Plaintiff, however, describes the government's interest as "using the Vehicles to ransom payment of the costs of enforcing the Boot and Tow Program." Pl. Memo. at p. 13.  On this point, Plaintiff relies on James Daniel Good for defining the "specific interest" here as a hostage situation.  Pl. Memo. at p. 13, fn. 2.  In James Daniel Good, however, the court identified the government's interest as "seizing real property before the forfeiture hearing." 510 U.S. at 56.  Assuming arguendo the specific interest here is seizing the Vehicles prior to notifying Plaintiff, this factor favors the City, for the reasons set forth above, including

that Plaintiff has no present possessory interest in Vehicles at the time of seizure.  See Santander (Suffolk Co.), 2021 U.S. Dist. LEXIS 188881, at *6.  Any process afforded Plaintiff prior to a vehicle seizure is simply process for process's sake and thus solely an administrative burden for the City.  See Stahl York Ave. Co., LLC, 641 Fed. Appx. at 73.

With respect to the post-seizure process, the City's interest in having a City employee make release determinations in accordance with standard policies is high. Notwithstanding Plaintiff's hyperbolic and hypothetical claims about the City holding vehicles hostage, Plaintiff received prompt notice and an opportunity to be heard.  "[R]equiring more under the circumstances would create a financial and administrative burden out of proportion to the interests at stake and the risk of an erroneous deprivation."  Manza, 915 F. Supp. 2d at 648. Moreover, as noted above, if lienholders were deemed constitutionally exempt from paying basic fees associated with the City's tow program, then ongoing viability of the scofflaw program would be severely threatened.

For all the above reasons, the City plainly provided Plaintiff process at a meaningful place and meaningful time sufficient to allow Plaintiff to protect its property interest in the Vehicle. Accordingly, the City's procedure satisfied procedural due process.

### 4.  Adequate Notice

Plaintiff claims the notice provided to a lienholder is inadequate because it purportedly does not contain information or provide access to any information regarding a "procedure for challenging the loss of its property (either the Vehicles or its money)."  Pl. Memo at p. 11.  Again, as noted above, Plaintiff is simply incorrect that the City afforded Plaintiff no procedures.  Plaintiff successfully undertook the very procedures set out in the notice to obtain a

release for the Vehicle,[6] and Plaintiff does not contend that its failure to take any further action to retrieve the Vehicle by the date on which the sales hold expired was due to inadequate notice. So to the extent it is claiming that it had inadequate notice of the City's procedures, the claim is dubious. Compare Santander Consumer USA, Inc. v. City of Yonkers, 2022 U.S. Dist. LEXIS 164416, at *9 (S.D.N.Y. Sept. 12, 2022) (municipality failed to provide notice to the vehicle owner reasonably calculated to apprise the vehicle owner of a vehicle seizure); Am. Honda Fin. Corp., 471 F. Supp.3d 399 (municipality seized vehicle and sold it off without providing any notice to the lienholder). Plaintiff's claim of inadequate notice is thus apparently premised on the claim that the City provides an inadequate opportunity to be heard. As noted above, though, this claim is without merit as not only did Plaintiff have the opportunity to engage with City personnel as to its entitlement to the Vehicle – which the City then credited when it issued the release to Plaintiff – it was also provided with a copy of the Execution which noted the ability to challenge the Execution via a CPLR Article 52 proceeding, a proceeding that Plaintiff apparently chose not to pursue. See Schonfeld Dec., Ex. E at CNY 100. Plaintiff's own failure to take full advantage of the process afforded does not constitute a due process violation on behalf of the City. Therefore, the Court should grant the City summary judgment on Plaintiff's due process claim.

---

[6] The DOF website provides additional information on its towing policies. See *Towed Vehicles – Frequently Asked Questions,* NYC DEPARTMENT OF FINANCE, available at: https://www.nyc.gov/site/finance/vehicles/services-towed-vehicles-faq.page (last accessed on June 21, 2023).

**POINT II**

**CITY DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FOURTH AMENDMENT CLAIM**

Plaintiff erroneously argues that the City's seizure of the Vehicle was unlawful under the Fourth Amendment. Pl. Memo at p. 17-21. Specifically, plaintiff claims that: (1) the seizures were executed without a warrant; (2) the circumstances surrounding the seizures do not fall into a recognized warrant exception; and (3) the manner of execution the City's "warrantless seizure[s]" was unreasonable. Id. at 18. Plaintiff's claims are without merit.

The Fourth Amendment protects individuals "against unreasonable searches and seizures." Santander Consumer USA, Inc., v. Port Authority of N.Y. & N.J., 20-cv-1998 (MKB) 2022 U.S. Dist. LEXIS 138986, at *12-13 (E.D.N.Y. Aug. 4, 2022) (hereinafter "Santander (Port Auth.)". "A seizure occurs when the Government interferes in some meaningful way with the individual's possession of property." Id. "Warrantless…seizures are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." United States v. Weaver, 9 F.4th 129, 138 (2d Cir. 2021); Mincey v. Arizona, 437 U.S. 385, 390 (1978). The Supreme Court has emphasized that "reasonableness is still the ultimate standard under the Fourth Amendment." Rackley, 186 F. Supp. 2d at 470.

The City's seizure of the Vehicle to satisfy outstanding parking violation judgments was reasonable under the Fourth Amendment. First, it is undisputed that the seizure was executed pursuant to judgments outstanding against the vehicle owner, and that the seizure was authorized by statute. Pursuant to New York Vehicle and Traffic Law ("VTL") § 237(5), the New York City Parking Violations Bureau is authorized to "enter judgments and enforce them, without court proceedings, in the same manner as the enforcement of money judgments in civil actions in any court of competent jurisdiction…" See also Admin. Code § 19-212 (permitting seizure of

automobiles if the total amount of outstanding judgments for parking violations exceeds $350); Yu Juan Sheng, 2009 U.S. Dist. LEXIS 129813, at * 26.

Second, this Circuit's precedent establishes that warrantless vehicle seizures by the government in satisfaction of outstanding parking violation judgments are considered reasonable under the Fourth Amendment. In Rackley, 186 F. Supp. 2d at 466, the City of New York twice seized plaintiff's car to satisfy outstanding parking judgments. Id. at 468. Plaintiff claimed that the City "acted in derogation of his rights by seizing his car without a valid warrant." Id. at 469. The court determined that a warrant was not required because the City: "(1) impinged on no privacy interest when they removed plaintiff's car from the City's streets; and (2) acted pursuant to [Parking Violations Bureau] default judgments entered pursuant to a neutral administrative process established under the legislative authority of the State of New York…" Id. at 472. Accordingly, the Rackley Court determined that "as a matter of law" the City's warrantless seizures of plaintiff's car was reasonable under the Fourth Amendment. Id. at 470. See also Santander (Port Auth.), 2022 U.S. Dist. LEXIS 138986, at * 17 ("The City's warrantless seizure of a person's vehicle from a public street due to that person's failure to pay parking ticket fines has been held not to violate the Fourth Amendment in that it is a reasonable seizure, does not implicate core privacy concerns requiring a warrant, and of itself demonstrates probable cause") (internal citations and quotations omitted); Tsinberg v. City of New York, 20-cv-749 (PAE) (SLC), 2021 U.S. Dist. LEXIS 13408, at *43-44 (S.D.N.Y. Jan. 22, 2021) (plaintiff "failed to allege any facts that would give rise to the plausible inference that the seizure of his Vehicle was unreasonable" because the City's seizure of his car based on outstanding parking violation judgments was authorized by statute); Yu Juan Sheng, 2009 U.S. Dist. LEXIS 129813, at *27 (because the City's seizure of plaintiff's car in satisfaction of parking judgments was authorized by statute and because "defendants at the very

least proceeded under the belief that their actions were proper," the seizure was not unreasonable and therefore not unconstitutional.). Here, that Plaintiff is a lienholder and claimed to have a possessory interest in the Vehicle at the time of its seizure is of no moment. Indeed, the City was acting pursuant to its authority under VTL § 237(5) and Administrative Code § 19-212 when it seized the Vehicle without a warrant in satisfaction of outstanding parking judgments issued against the vehicle's registered owner. Accordingly, the Vehicle seizure was conducted in accordance with established law and therefore did not violate the Fourth Amendment.

To further support its claims, Plaintiff cites to Harrell v. City of New York, 138 F. Supp. 3d 479 (S.D.N.Y. 2015), for the proposition that the City's policy of seizing vehicles without a warrant is a violation of the Fourth Amendment. Pl. Memo at 18. Plaintiff fails to acknowledge that its situation is quite distinguishable from the plaintiffs in Harrell. In Harrell, plaintiffs' vehicles were seized because a New York City Taxi and Limousine inspector had probable cause to believe that the vehicles were being operated as unlicensed for-hire vehicles in violation of certain provisions of the Administrative Code. Id. at 484. The Harrell plaintiffs "were the title owners, who had obvious present possessory interests in the vehicles, and thus clear Fourth Amendment claims." Santander (Nassau Co.), 2022 U.S. Dist. LEXIS 152268, at * 16. Here, Plaintiff does not "have a present possessory interest in the vehicle[s] simply because it is a lienholder." Id. at * 16; Santander (Suffolk Co.), 2021 U.S. Dist. LEXIS 188881, at *17 ("[T]o that end 'it must be emphasized that unlike' titled vehicle owners, Plaintiff, as the 'innocent lienholder does not have a present possessory right' to the seized vehicles.") (internal citations omitted). Accordingly, Plaintiff's citation to Harrell is irrelevant.[7]

---

[7] It is unclear if Plaintiff even has standing to challenge the initial vehicle seizure on Fourth Amendment grounds because Plaintiff, as the lienholder, did not have a present possessory interest in the Vehicle at the time it was seized. See Santander (Suffolk Co.), 2021 U.S. Dist. LEXIS 188881, at *17.

Finally, Plaintiff asserts that the City's "practice of retaining vehicles to force lienholders to pay enforcement, towing and storage fees separately violated the Fourth Amendment." Pl. Memo at p. 19. Plaintiff's claim is incorrect.[8] In <u>Santander (Port Auth.)</u>, 2022 U.S. Dist. LEXIS 138986, the Port Authority of New York and New Jersey seized four vehicles after they were abandoned in New York City airport parking lots. Plaintiff lienholder challenged, on Fourth Amendment grounds, the initial seizures of the vehicles and their continued impoundment. The court denied all Fourth Amendment claims and with respect to the issue of continued retention determined that the retention of the seized vehicles "until the owner pays relevant fees is not a violation of the Fourth Amendment." <u>Id</u>. at 17. <u>See also</u>, <u>Bennett v. Dutchess County New York</u>, 832 F. App'x 58, 60 (2d Cir. 2020) ("'a seizure claim based [solely] on the unlawful retention' of property that was lawfully seized [i]s … 'too novel a theory to warrant Fourth Amendment protection.'") (internal citations omitted); <u>Gerte v. Borough of Naugatuck</u>, No. 19-cv-1511 2021 U.S. Dist. LEXIS 57972, at *5 (D. Conn. Mar. 26, 2021) ("Where an initial seizure of property was reasonable, the 'failure to return the items does not, by itself, state a separate Fourth Amendment claim of unreasonable seizure,' and improper retention of property may be addressed as a procedural due process claim."). (internal citations omitted).

---

[8] Indeed, Plaintiff recognizes the weakness of this argument as it notes that there are "seemingly inconsistent holdings from the Second Circuit" whereby courts have found continued retention of seized property constitutional. Pl Memo at p. 19 fn. 4.

## POINT III

## CITY DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FIFTH AMENDMENT TAKINGS CLAIM

Plaintiff's takings claim alleges that the City's seizure of the Vehicle "temporarily rendered MBFS's private property (lien) unenforceable and did not compensate MBFS" in violation of the Fifth Amendment. Pl. Memo at 23.

The Fifth Amendment, made applicable to the States under the Fourteenth Amendment, prohibits the government from taking "private property for public use without just compensation." Palazzolo v. Rhode Island, 533 U.S. 606, 633 (2001). A taking occurs when the government takes possession of an interest in property for some public purpose for a period of time during which the property owner "ha[s] no use of the property or was unable to use the property." Bt. Holdings v. Vill. Of Chester, 670 Fed. Appx. 17, 18-19 (2d Cir. 2016); See also Elmsford Apartment Associates LLC v. Cuomo, 20-cv-4062 (CM), 2020 U.S. Dist. LEXIS 115354, at *25 (quoting Tahoe—Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 330 (2002) ("A categorical regulatory taking occurs in 'the extraordinary circumstance when no productive or economically beneficial use of land is permitted.'")

Plaintiff claims that "[w]hile the time period of the temporary taking was short (seizure on October 10, 2019 to sale on December 13, 2019), the consequences were severe as it resulted in the direct loss of MBFS's legal right to recover the Vehicle which had a value of $14,000." Pl. Memo at 23. Plaintiff further states "[b]ut for CNY's taking of MBFS's lien rights, MBFS would have recovered the Vehicle and realized that $14,000 value for itself." Id. Plaintiff's claim is without merit. As stated in Point II, supra, the City lawfully seized the Vehicle to satisfy outstanding parking violation judgments. See VTL § 237(5); Administrative Code § 19-212. And,

the City is entitled to collect fees—as set forth by statute--for booting, towing and storing the Vehicle. See CPLR § 8013(c); N.Y. Tax Law §§ 1105(c)(3) and (c)(6).

Furthermore, Plaintiff cannot demonstrate that the City's policy and procedure for seizing vehicles in satisfaction of parking violation judgments left it with no "productive or economically beneficial use" of the Vehicle. Elmsford, 2020 U.S. Dist. LEXIS 115354, at *25. At any time after Plaintiff was notified of the Vehicle seizure, Plaintiff could have retrieved the Vehicle by submitting the requisite paperwork and paying booting, towing and storage fees (which Plaintiff then could have recovered from the vehicle owner per its contract). Plaintiff admits that it was first notified about the Vehicle No. 793 seizure on or about October 18, 2019, and received a Notice to Release from the City on November 6, 2019.  See Pl. Rule 56.1 Statement, ¶¶ 16,19. However, between November 6, 2019 and December 13, 2019 (the date the Vehicle was auctioned), Plaintiff failed to retrieve the Vehicle. Had Plaintiff taken immediate action once it received the Notice to Release on November 6, 2019, Plaintiff could have retrieved the Vehicle prior to the December 13, 2019 auction date.

Finally, caselaw cited by Plaintiff in support of its takings claim is scarce and irrelevant. Plaintiff cites to Frien v. Pennsylvania State Police, 47 F.4th 247 (3rd Cir. 2022), for the proposition that private property that was subject to "an initially valid seizure to enforce State law, but detained beyond any legitimate reason to do so without being returned" constitutes a taking under the Fifth Amendment. (emphasis in original). Pl. Memo at p. 22. The facts in Frien are in no way analogous to the facts of the instant action. In Frien, a  man murdered a Pennsylvania State Trooper. See 47 F.4th at 250. The State Police then seized his parents' guns as arrest evidence. Id. Eight years after the crime was committed, the government refused to return the guns to the parents even though it did not believe that the parents or guns were involved in the murder. Id. Ultimately,

the Court determined that because the parents were never compensated for the property that was taken and never returned, they had a Fifth Amendment takings claim. Id. Unlike the defendants in Frien who kept property for over eight years and refused to return it, here the City auctioned Vehicle 793 only after it provided Plaintiff with ample time to recover the Vehicle.

Accordingly, City Defendant is entitled to summary judgment on Plaintiff's Fifth Amendment takings claim.

POINT IV

**CITY DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S MONELL CLAIM**

As discussed supra, in POINTS I, II, and III, the City is entitled to summary judgment on all federal constitutional claims. Since there is no underlying constitutional violation herein, there can be no Monell liability. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (Absent an underlying constitutional violation, there is no Monell liability); Matican v. City of N.Y., 524 F.3d 151, 154 (2d Cir. 2008) (If there is no constitutional violation, municipality cannot be held liable "regardless of whether the officers acted pursuant to a municipal policy or custom"); Coleman v. County of Suffolk, 685 Fed. App'x 69, 72 (2d Cir. 2017); Thevenin v. Cooper, 2020 U.S. Dist. LEXIS 267098, at * 20 (E.D.N.Y. Aug. 14, 2020) (dismissing Monell claim because Defendant's conduct "was not sanctioned or pursuant to an official policy").

POINT V

**CITY DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON FJA'S CROSS CLAIM FOR INDEMNIFICATION**

FJA asserts a cross-claim against the City for indemnification by stating that to the extent FJA is "responsible for damages allegedly sustained by Plaintiff, the liability will have been brought about and caused wholly or in part by the negligence, carelessness, recklessness, wanton

disregard and or fault of NYC …. and FJA will be entitled to judgment over for common law indemnification against [] NYC for the full amount of such judgment." Schonfeld Dec., Ex. C at ¶ 133. FJA provides no evidentiary support for this claim. FJA does not point to any contract or agreement between itself and the City demonstrating that indemnification was agreed upon between the parties. In fact, the contract between the City of New York and Paylock explicitly states "Nothing contained in the agreement between Paylock and the subcontractor [i.e. Five J's], or under the agreement between the City and Paylock, shall create any contractual relation between the subcontractor and the City." Duston Dec., Ex. 9. Because there is no contract between the City and Five J's establishing FJA's entitlement to indemnification and because FJA provides no support for its claim, FJA's cross-claim is without merit.

## **CONCLUSION**

For the foregoing reasons, City Defendant respectfully requests that the Court grant

its cross-motion for summary judgment dismissing the Complaint and cross-claim in their entirety.


Dated:      New York, New York
            June 21, 2023


                              **HON. SYLVIA O. HINDS-RADIX**
                              Corporation Counsel of the City of New York
                              *Attorney for Defendants*
                              100 Church Street
                              New York, New York 10007
                              (212) 356-2183


                          By: /s/ *Samantha Schonfeld*
                                 Edward Murray
                                 Samantha Schonfeld
                                 *Assistant Corporation Counsels*