UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MERCEDES-BENZ FINANCIAL SERVICES USA, LLC

           *Plaintiff*,

v.

THE CITY OF NEW YORK and FIVE J'S AUTOMOTIVE LTD.,

           *Defendants*.

21-CV-3908 (VSB)

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE CITY OF NEW YORK'S CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

HON. SYLVIA O. HINDS-RADIX
Corporation Counsel of the
  City of New York
Attorney for City of New Yor
100 Church Street
New York, NY 10007
Tel: (212) 356-2183

Karen Selvin,
Edward Murray,
Samantha Schonfeld
    *of Counsel*

September 22, 2023

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ II

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT

    I.    The City is Entitled to Summary Judgment on Plaintiff's Due Process Claim. ................................................................................ 2

        A. Mathews Factors ............................................................................ 3

            i.   Plaintiff's Interest in the Vehicle ........................................ 3

            ii.  Risk of Erroneous Deprivation ........................................... 4

            iii. Governmental Interest ........................................................ 9

    II.   The City is Entitled to Summary Judgment on Plaintiff's Fourth Amendment Claim ........................................................................... 10

    III.  The City is Entitled to Summary Judgment on Plaintiff's Takings Claim ................................................................................................ 12

    IV.  Plaintiff is not entitled to Summary Judgment on Damages ......................................................................................................... 14

    V.   The City is entitled to Summary Judgment on FJA's Cross Claim for Indemnification ................................................................ 14

CONCLUSION ...................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**                                                                                                     **Pages**

Bt. Holdings v. Vill. Of Chester,
   670 Fed. Appx. 17 (2d Cir. 2016)......................................................................................13

Butler v. Castro,
   896 F.2d 698 (2d Cir. 1990)..............................................................................................2

City of Los Angeles v. David,
   538 U.S. 715 (2003)..........................................................................................................8

De Young v. City of New York,
   607 F. Supp. 1040 (S.D.N.Y. 1985)...............................................................................4, 9

Elmsford Apartment Associates LLC v. Cuomo,
   20-cv-4062 (CM), 2020 U.S. Dist. LEXIS 115354 ................................................................13

Ford Motor Credit Co. v. N.Y. City Police Dep't,
   503 F.3d 186 (2d Cir. 2007)..........................................................................................5, 7

Gagnon v. Scarpelli,
   411 U.S. 778 (1973)........................................................................................................10

Gerte v. Borough of Naugatuck,
   No. 19-cv-1511 2021 U.S. Dist. LEXIS 57972
   (D. Conn. Mar. 26, 2021)................................................................................................11

Goichman v. Rheuban Motors, Inc.,
   682 F.2d 1320 (9th Cir. 1982) ......................................................................................4, 9

Henry v. City of New York,
   638 Fed. Appx. 113 (2d Cir. 2016)................................................................................7, 8

Lee v. City of Chicago,
   330 F.3d (7th Cir. 2003) ................................................................................................11

Liranzo v. City of New York,
   11-cv-4434(RJS), 2012 U.S. Dist. LEXIS 178872
   (S.D.N.Y. Dec. 11, 2012).................................................................................................3

Manuel v. City of Joliet, Ill.,
   137 S. Ct. 911 (2017).................................................................................................11, 12

Mathews v. Eldridge,
   424 U.S. 319 (1976).....................................................................................................3, 4

| **Cases** | **Pages** |
|---|---|

McCahey v. L.P. Investors,
    774 F.2d 543 (2d Cir. 1985)..................................................................................5, 9

McClendon v. Rosetti,
    460 F.2d 111 (2d Cir. 1972)........................................................................................5

Morgan v. Wofford,
    472 F.2d 822 (5th Cir. 1973) ......................................................................................8

Nnebe v. Daus,
    931 F.3d 66 (2d Cir. 2019)..........................................................................................2

Patrick v. Success Acad. Charter Schs., Inc.,
    354 F. Supp. 3d 185 (E.D.N.Y. 2018) ........................................................................8

Prop. Clerk v. Molomo,
    81 N.Y.2d 936 (1993) .................................................................................................7

Rios v. Town of Huntington Hous. Auth.,
    853 F.Supp.2d 330 (E.D.N.Y. 2012) ..........................................................................6

Santander Consumer USA, Inc. v. Cty. of Suffolk,
    20-cv-2656(JS)(AKT), 2021 U.S. Dist.
    LEXIS 188881 (E.D.N.Y. Sept. 30, 2021) ................................................. 3, 4, 10-11

Santander Consumer USA, Inc. v. Port Authority of N.Y. & N.J.,
    No. 20-cv-1997(MKB), 2023 U.S. Dist. LEXIS 157682
    (E.D.N.Y. Sept. 6, 2023)............................................................................................11

Seal v. Morgan,
    229 F.3d 567 (6th Cir. 2000) ......................................................................................9

Shaheed v. City of Wilmington,
    21-cv-1333 (CFC), 2022 U.S. Dist. LEXIS 206857
    (D. Del. Nov. 15, 2022) ..............................................................................................4

Stahl York Ave. Co., LLC v. City of N.Y. Landmarks Pres. Comm'n,
    641 Fed. Appx. 68 (2d Cir. 2016)...............................................................................9

Tahoe—Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,
    535 U.S. 302 (2002)..................................................................................................13

United States v. Burgard,
    675 F.3d 1029 (7th Cir. 2012) ..................................................................................11

**Cases**                                                                                                                                                          **Pages**

<u>United States v. James Daniel Good Real Prop.</u>,
   510 U.S. 43 (1993)......................................................................................................5

**Statutes**

CPLR § 5234(a) ............................................................................................................14

CPLR § 8013(c) ............................................................................................................12

Fed. R. Civ. P. 56 ............................................................................................................1

N.Y.C. Admin. Code § 19-212 ......................................................................................1

N.Y. Tax Law § 1105(c)(3) .........................................................................................12

N.Y. Tax Law § 1105(c)(6) .........................................................................................12

N.Y. Vehic. and Traffic Law § 237(5)............................................................................1

UCC § 9-609 <u>et seq.</u>......................................................................................................4

Defendant City of New York ("City") submits this reply memorandum in further support of its cross-motion for summary judgment and in opposition to Plaintiff's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**PRELIMINARY STATEMENT**

Under the guise of procedural due process, Plaintiff, the financing arm of a multi-billion dollar global company,[1] is seeking to co-opt the City's scofflaw enforcement program to facilitate its own vehicle repossession efforts. Plaintiff's self-described position as a "superior-priority creditor," however, does not entitle it to supra-constitutional rights, including a right to store vehicles on the City's dime. See Plaintiff's Memorandum of Law in Further Support of its Motion for Summary Judgment and in Opposition to the Cross-Motion by Defendant City of New York ("Pl. Opp. Mem.") at p. 7. Due process requires that Plaintiff be afforded a meaningful opportunity to be heard, which is exactly what happened here. The City provided Plaintiff prompt notice of the vehicle seizure, placed a hold on public sale of the vehicle at Plaintiff's request, and ultimately issued a release to Plaintiff to repossess the vehicle. The City plainly afforded Plaintiff adequate process to protect its interests in the vehicle, and Plaintiff's own failure to take action to repossess the vehicle by the date on which the sales hold expired is not a basis to find otherwise.

Plaintiff's Fourth Amendment claim similarly fails as the seizure of the vehicle was authorized by statute to satisfy outstanding judgments-debts of over $350.00. See New York Vehicle and Traffic Law ("VTL") Section 237(5) and New York City Administrative Code ("Administrative Code" or "Admin. Code") Section 19-212.

---

[1] See 2nd Quarter Results 2023 (July 27, 2023), available at: https://group.mercedes-benz.com/investors/reports-news/interim-reports/q2-2023/.

Moreover, Plaintiff's takings claim fails as it is unable to show that the City took possession of the vehicle for a public purpose because the vehicle was seized to satisfy a judgment-debt owed by the vehicle owner, which is specifically authorized by statute.

Finally, Defendant Five J's Automotive Ltd. ("Five J's" or "FJA") is asserting a cross claim for indemnification. Because there is no contract between the City and FJA providing for indemnification and because FJA provides no support for its claim, the claim is without merit.

## ARGUMENT

**I. The City is Entitled to Summary Judgment on Plaintiff's Due Process Claim.**

Plaintiff's arguments that it was denied procedural due process do not hold water. With respect to the adequacy of the City's notice of the procedures for recovering a seized vehicle, contrary to Plaintiff's claim, the City does not hide the ball from lienholders. See Pl. Opp. Mem. at p. 5. The process was accurately detailed in a letter to Plaintiff, as well as posted online, and Plaintiff followed that process and obtained a release from the City to recover the vehicle. See Def. 56.1 St., ¶¶ 40-46. Accordingly, Plaintiff's reliance on Butler v. Castro, 896 F.2d 698 (2d Cir. 1990) and Nnebe v. Daus, 931 F.3d 66 (2d Cir. 2019), is misplaced. See Pl. Opp. Mem. at p. 5. In Butler, the claimant *unsuccessfully* attempted to recover property because he was not served notice of the relevant procedures and the published notice of the procedures was "entirely misleading." 896 F.2d at 703. Similarly, in Nnebe, the notice that was served on plaintiffs who had their licenses suspended due to an arrest, as well as the published rules, did not accurately reflect the issue to be determined at the hearing to lift their suspension, to wit, the nexus of the charged offense to public safety. 931 F.3d at 88-89. No such facial deficiencies are at issue here.

Plaintiff is instead primarily arguing that the notice was inadequate because it did not set forth the self-serving procedures Plaintiff now seeks. As an initial matter, Plaintiff's opposition brief does not address the City's arguments regarding adequacy of pre-vehicle seizure process.

See City Mem. at p. 11-13. Plaintiff therefore waived any arguments regarding such a claim. See Liranzo v. City of New York, 11-cv-4434(RJS), 2012 U.S. Dist. LEXIS 178872, at *11 (S.D.N.Y. Dec. 11, 2012). With respect to the post-vehicle seizure process, for the reasons below and in the City's moving papers, Plaintiff offers no reason for this Court to conclude that the flexible three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976), entitles it to more process than it received here – that is, prompt notice of the vehicle seizure and the opportunity to stay public auction of the vehicle and obtain possession of the vehicle.

    A.   **Mathews Factors**

        i.   **Plaintiff's Interest in the Vehicle**

Contrary to Plaintiff's claim, the City does not "suggest that lienholders never have possessory rights" to a seized vehicle. See Pl. Opp. Mem. at p. 8. As set forth in the City's moving papers, the City acknowledges that Plaintiff has a contingent *possessory* interest in the vehicle, as well as an interest in the present value of the vehicle. See City Mem. at p. 10. The City also issued a release to Plaintiff so that it could obtain *possession* of the vehicle. See Def. 56.1 St., ¶ 45.

The City also disputes the contention that Plaintiff had a present possessory right at the moment that the City seized the vehicle. See Pl. Opp. Mem. at p. 9. On this point, Plaintiff is simply regurgitating a failed argument that the plaintiff-lienholder made in Santander Consumer USA, Inc. v. Cty. of Suffolk, 20-cv-2656(JS)(AKT), 2021 U.S. Dist. LEXIS 188881 (E.D.N.Y. Sept. 30, 2021), as is clear from the following excerpt:

> [T]he parties do not indicate when a plaintiff/lienholder's right in the present value of the Subject Vehicles is transformed into a present possessory right to the Subject Vehicles, whether by default or breach of relevant financing agreements between vehicle owners and Plaintiff. Indeed, Plaintiff does not provide any authority for its conclusion that a lienholder is entitled to immediate repossession, i.e., "a present possessory right," in the Subject Vehicles "every single time [the County] seizes any vehicle for forfeiture on which [Plaintiff] holds a lien by virtue of the forfeiture itself." (Pl. Opp. at

> 16; id. at 15-16); cf. Leon, 960 N.Y.S.2d 341 ("Pursuant to UCC § 9-609 et seq., based on a contract default, a secured creditor may seek to recover possession of collateral with or without judicial process" (emphasis added)).

Santander, 2021 U.S. Dist. LEXIS 188881, at *28-29. Plaintiff's reference to this decision cannot provide the authority that the Santander court found lacking in part because Plaintiff is merely citing Plaintiff's counsel as support.[2] More importantly, the court concluded that the plaintiff-lienholder had "no property interest in the 'present possessory right'" to the vehicles. Id., at *18.

Regardless, assuming that Plaintiff's interest in the vehicle transforms into a present possessory interest at the moment the City seized the vehicle (though it certainly does not), Plaintiff cites no authority for the proposition that it conclusively resolves the Mathews inquiry in favor of Plaintiff. In fact, even with vehicle owners, who clearly have a present possessory interest in their vehicles, the government can, as here, still require payment of towing and storage fees prior to release of the vehicle. See, e.g., Shaheed v. City of Wilmington, 21-cv-1333 (CFC), 2022 U.S. Dist. LEXIS 206857, at *20-21 (D. Del. Nov. 15, 2022) (rejecting a "release-on-demand" policy for vehicle owners); De Young v. City of New York, 607 F. Supp. 1040, 1045 (S.D.N.Y. 1985); Goichman v. Rheuban Motors, Inc., 682 F.2d 1320, 1325 (9th Cir. 1982).

   ii. **Risk of Erroneous Deprivation**

With respect to the adequacy of the City's procedures, Plaintiff misconstrues basic aspects of this case. Contrary to Plaintiff's claim, the City does not take a "claimant-can-file-a-lawsuit-to-obtain-due-process position" in this case. See Pl. Opp. Mem. at p. 3. In fact, as is apparent from the undisputed facts of this case, Plaintiff obtained a release to recover the seized vehicle without having to file a lawsuit. See Def. 56.1 St., ¶¶ 38-46. For this reason, this case is

---

[2] Plaintiff's counsel in this case also served as counsel for the Santander plaintiff. See Santander, 2021 U.S. Dist. LEXIS 188881.

4

distinguishable from McClendon v. Rosetti, 460 F.2d 111, 113 (2d Cir. 1972), where plaintiffs made a demand for return of property but were advised by defendants that they could not do so without commencing a lawsuit. Moreover, the City's discussion of the availability of a court proceeding under Article 52 of New York Civil Practice Law and Rules ("CPLR") is not, as Plaintiff suggests, some admission that that proceeding is the constitutional process that the City affords Plaintiff. See Pl. Opp. Mem. at p. 4. Rather, it serves to highlight the existence of yet one form of judicial oversight to assess the propriety of the City's actions here. See also CPLR Article 78 (providing a mechanism for challenging decisions of administrative agencies). Nonetheless, Plaintiff notably ignores the City's citation to McCahey v. L.P. Investors, 774 F.2d 543 (2d Cir. 1985), where the Second Circuit concluded that a judgment debtor received due process through an informal process to resolve debts combined with the availability of a CPLR Article 52 proceeding. See City Mem. at p. 14.

Also contrary to Plaintiff's claim, the City clearly allows lienholders to participate in a process that protects their interest in a vehicle. See Pl. Opp. Mem. at p. 9. Again, the City sent Plaintiff notice of the seizure and Plaintiff responded by requesting and receiving from the City a hold on auction of the vehicle and thereafter taking the necessary steps to obtain a release to repossess the vehicle. See Def. 56.1 St., ¶¶ 38-46. Thus, Plaintiff's reliance on Ford Motor Credit Co. v. N.Y. City Police Dep't, 503 F.3d 186 (2d Cir. 2007) is misplaced. See Pl. Opp. Mem. at p. 11. There, the defendant refused to allow a lienholder to participate in a forfeiture proceeding involving a vehicle in which it held an interest. Ford Motor Credit Co., 503 F.3d at 189-190.

Plaintiff further attempts to argue that the risk of error under the City's procedures is high by comparing the unconstitutional "*ex parte* seizure" in United States v. James Daniel Good Real Prop., 510 U.S. 43 (1993), to what the Plaintiff describes as the City's "*ex parte* policy." Pl. Opp.

5

Mem. at p. 9. To the extent Plaintiff uses the phrase "*ex parte* policy" to suggest that a lienholder is not permitted to participate in the City's processes, the suggestion is negated by the fact that Plaintiff immediately thereafter refers to the City's "standard practices" for "lienholders." Id.

Regarding the process in which Plaintiff participated, Plaintiff describes this case as involving a "$14,000 clerical error" – $14,000 being the amount at which the vehicle sold at auction. Pl. Opp. Mem. at p. 6. Plaintiff's phraseology is notable. First, a reasonable reading of the facts of this case is that a clerical error was made by Plaintiff, as Plaintiff obtained a release from the City to repossess the vehicle and then failed to repossess the vehicle prior to the date on which the City's hold staying auction of the vehicle expired. See Def. 56.1 St., ¶¶ 45-48. Procedural due process does not serve to remedy Plaintiff's mistakes. Second, a clerical error by the City here, if any, does not suggest anything unfair about the City's process. Rather it supports the City's position that the process is sound in part because Plaintiff can seek judicial review of an "administrative agency error" in a CPLR Article 78 proceeding. Rios v. Town of Huntington Hous. Auth., 853 F.Supp.2d 330, 340 (E.D.N.Y. 2012). Plaintiff's case is premised in part on the purported refusal of an employee of Plaintiff's repossession vendor to pay the judgment debt of $366 to repossess the vehicle (supposedly after paying more than $4,000 in towing and storage fees). See Declaration of Madu Azubogu, Ex. H. The requirement to pay the $366, however, was *erroneously* imposed on Plaintiff by a City employee because it is the *undisputed* fact that the City's standard procedures provide that lienholders are not required to pay the judgment debt to repossess a vehicle. See Def. 56.1 St., ¶ 31-32. Thus, contrary to Plaintiff's claim (as well as its own response to the City's 56.1 Statement), the City does not "agree" that "all its actions occurred according to its regular, established Boot and Tow Policy." Pl. Opp. Mem. at p. 4, fn. 7. Assuming Plaintiff could not remedy the error with City personnel, Plaintiff has recourse via an CPLR

Article 78 proceeding, which affords Plaintiff due process. See Henry v. City of New York, 638 Fed. Appx. 113 (2d Cir. 2016). In its opposition papers, Plaintiff completely ignores this point. To the extent Plaintiff is contesting the requirement to pay towing and storage fees, Plaintiff can likewise dispute the accuracy of such charges in an Article 78 proceeding, but can also recover these costs from the vehicle owner, which adequately protects its interest in the vehicle. See Prop. Clerk v. Molomo, 81 N.Y.2d 936, 938 (1993).[3]

Plaintiff also claims that the City's requirement that Plaintiff provide a hold harmless letter to obtain a release of the vehicle "creates an unacceptable risk of error." Pl. Opp. Mem. at p. 8-9. Plaintiff does not elaborate at all on how such a letter imposes any risk of an erroneous deprivation of Plaintiff's interest in the seized vehicle. As noted in the City's moving papers, the City requires the letter in lieu of requiring Plaintiff to obtain a court order for release of the vehicles. City Mem. at p. 11. Thus, if anything, by facilitating a more prompt return of the vehicle to Plaintiff, the City's procedures not only protect any possessory interest Plaintiff has in the vehicle, but also protects Plaintiff's interest in the present value of the vehicle. See Ford Motor Credit Co., 503 F.3d at 192 (noting that delay of resolution of a claim may deprive a lienholder of its interest in the present value of a vehicle as "the vehicle depreciates over time").

At bottom, Plaintiff is arguing that due process requires that the City provide Plaintiff a hearing before an administrative law judge at the City's administrative tribunal, and that such ALJ find that lienholders cannot be required to pay any fees to repossess a vehicle and to hold the City

---

[3] Plaintiff gives short shrift to relevant case law, such as Molomo, which provide that the interests of a lienholder in a vehicle can be "fully" protected in the vehicle forfeiture context by receiving proceeds from the forfeiture sale and seeking any deficiency from the debtor. See Pl. Opp. Mem. at p. 8, fn. 9. Plaintiff tries to explain this case law away by blithely arguing that the government has "powerful rights" in the forfeiture context, but *no* rights in "money judgment enforcement matters." Id. To the contrary, the City has important governmental interests at stake here, as discussed below. Moreover, here, unlike in the forfeiture context, the City is providing an efficient process for lienholders to take possession of the vehicle.

7

harmless for release of a vehicle. See Pl. Opp. Mem. at p. 2. Indeed, Plaintiff is not arguing about the accuracy of any charges imposed in this case.[4] Instead, Plaintiff is arguing that, as a matter of law, it cannot be required to "pay the enforcement costs" of the City. See id. at p. 7. Similarly, Plaintiff is not suggesting that a hold harmless letter is appropriate in some cases and not others. Rather, under Plaintiff's theory, such a condition is deficient because Plaintiff is *constitutionally* entitled to a no-hassle release of the vehicle, regardless of the fact that in releasing the vehicle to the lienholder, the City risks being sued by the vehicle owner who may have a different position on whether the seizure violated the financing agreement. Thus, the process that Plaintiff demands is not one that "cries out for" – in Plaintiff's parlance – or requires "resolution by a neutral" arbiter who "has the requisite training to resolve legal disputes (someone with a law degree)." Id. at p. 6-7. What Plaintiff seeks is a mindless functionary who will agree with Plaintiff every single time that it cannot be subject to *any* conditions of release, and that the City and its vendors will merely act as its repossession agents, free of charge. That is not the type of hearing contemplated by the Due Process Clause. See Patrick v. Success Acad. Charter Schs., Inc., 354 F. Supp. 3d 185, 203 (E.D.N.Y. 2018) ("[P]rocedural due process guarantees only a process, not a specific outcome."). It is also not the type of meaningful hearing addressed in City of Los Angeles v. David, 538 U.S. 715 (2003), namely, a hearing for a vehicle owner to contest the parking violation underlying a vehicle seizure. See Pl. Opp. Mem. at p. 11.

The City's procedures do not pose any serious risk of erroneous deprivation of Plaintiff's lienholder interests. Plaintiff can nonetheless pursue an CPLR Article 52 proceeding to modify or

---

[4] For this reason, Plaintiff's professed need to repeat a "condemnation" from the Fifth Circuit that Plaintiff be "allowed to challenge the accuracy of the amount [of charges] claimed" is window dressing. See Pl. Opp. Mem. at p. 10 (citing Morgan v. Wofford, 472 F.2d 822 (5th Cir. 1973)). In any event, unlike the plaintiff in Morgan, if Plaintiff were serious about the accuracy of the charges here, Plaintiff has recourse via a CPLR Article 78 proceeding, which again satisfies due process. See Henry, 638 Fed. Appx. 113.

even deny the City's procedures, which still further undermines Plaintiff's contention regarding an unacceptable risk of error. See McCahey, 774 F.2d 543.

### iii. Governmental Interest

Plaintiff takes a go-for-broke position that the City has *no* governmental interest at stake in this case, claiming that it is "pure hyperbole" that the City's enforcement program would be threatened by the blatantly self-serving process it seeks. See Pl. Opp. Mem. at p. 11. But case law – and common sense – provide that forcing the City and vendor to absorb towing and storage costs anytime a lienholder recovers a vehicle would be burdensome. See De Young, 607 F. Supp. at 1045 ("[T]here can be no question but that forcing the City either to absorb the difference between the bond and [towing and storage] charges, or to collect the difference after the car has been released, would impose substantial fiscal and administrative burdens."); Goichman, 682 F.2d at 1325 (recognizing the "government's considerable interest in retaining possession of the vehicle as security for the owner's payment of towing and storage charges" in part because it would "prove burdensome and expensive" for the city to "secure the costs of towage itself"). The same goes for providing for a formal hearing before an administrative law judge where the outcome is already determined in the lienholder's favor. See Stahl York Ave. Co., LLC v. City of N.Y. Landmarks Pres. Comm'n, 641 Fed. Appx. 68, 73 (2d Cir. 2016). See also Seal v. Morgan, 229 F.3d 567, 573 (6th Cir. 2000) ("There is no abstract federal constitutional right to process for process's sake.").

Additionally, the hold harmless letter provides the City basic protection when releasing vehicles to a lienholder in the absence of a court order. In releasing a vehicle to a lienholder, the City is not deciding private contractual rights (and is certainly in no position to) but is instead principally relying on representations of the lienholder that it is entitled to the vehicle. Under these circumstances, the City reasonably requires the hold harmless letter so that it is not dragged into potentially thousands of private disputes, which is also an important governmental interest.

9

Plaintiff does not offer *any* explanation of how it is harmed by the practice. Plaintiff instead poses a hypothetical, namely, that the City be required to hold a hearing to resolve a dispute between private parties over seized vehicles. See Pl. Opp. Mem. at p. 6. This conjured dispute, though, does not amount to a denial of Plaintiff's procedural due process rights here.

What remains of Plaintiff's argument is that the City is simply a "dictator" enforcing "dictatorial" policies. Pl. Opp. Mem. at p. 2, 7, 10, 15. Such puffed up language, by itself, cannot be enough to find in Plaintiff's favor and sacrifice the City's efficient and meaningful process that provided Plaintiff prompt notice and the opportunity to recover the vehicle. See Gagnon v. Scarpelli, 411 U.S. 778 (1973) ("Due process is not so rigid as to require that significant interests in informality, flexibility, and economy must always be sacrificed."). The Court should grant the City summary judgment on Plaintiff's due process claim.

## II. The City is Entitled to Summary Judgment on Plaintiff's Fourth Amendment Claim

In its initial moving papers, Plaintiff's Fourth Amendment argument was two-fold. First, Plaintiff argued that the vehicle seizure was illegal because it was executed without a warrant and in the absence of any recognized warrant exception. Second, Plaintiff argued that the City's continued retention of the vehicle after the initial seizure "to force lienholders to pay enforcement, towing and storage fees separately violate[s] the Fourth Amendment." Pl. Memo at p. 19. However, in its reply papers, Plaintiff appears to abandon its first argument and focus primarily on the City's continued retention of the vehicle. Specifically, Plaintiff asserts that "[the City] affirmatively expanded its intrusion on MBFS's rights beyond the scope of its justification for seizing the vehicle (judgment collection against the vehicle owner.)" Pl. Opp. Mem. at p. 13. Plaintiff's claim is incorrect.

Courts in this Circuit have determined that the continued retention of property after an initial seizure does not necessarily implicate the Fourth Amendment. See Santander (Port Auth.),

2022 U.S. Dist. LEXIS 138986, at *17[5] (the retention of the four seized vehicles "until the owner pays relevant fees is not a violation of the Fourth Amendment."); Gerte v. Borough of Naugatuck, No. 19-cv-1511 2021 U.S. Dist. LEXIS 57972, at *5 (D. Conn. Mar. 26, 2021) ("Where an initial seizure of property was reasonable, the 'failure to return the items does not, by itself, state a separate Fourth Amendment claim of unreasonable seizure,' and improper retention of property may be addressed as a procedural due process claim.") (internal citations omitted). See also United States v. Burgard, 675 F.3d 1029 (7th Cir. 2012) discussing Lee v. City of Chicago, 330 F.3d, 456, 461-65 (7th Cir. 2003) ("in Lee we held that an individual cannot challenge the police's continued retention of his vehicle for failure to pay impound fees on Fourth Amendment grounds; he could only challenge the initial seizure.").

Plaintiff boldly asserts that the governing case on the continued retention of property is Manuel v. City of Joliet, Ill., 137 S. Ct. 911 (2017). Pl. Opp. Mem. at p. 14. However, Manuel involves a Fourth Amendment analysis in the context of pretrial detention of an individual in a criminal proceeding. In Manuel, Plaintiff was arrested during a routine traffic stop when police officers found a vitamin bottle containing pills. Plaintiff was arrested even though the pills tested negative for controlled substances. Once in custody, an Illinois lab again tested the pills and once again they came back negative for controlled substances. However, a technician lied and reported that one pill tested positive for "probable presence of ecstasy." Id. at 912. Based on this false statement, a complaint was filed against Plaintiff and the Court found probable cause to detain him

---

[5] Contrary to Plaintiff's assertion that this decision is not final, the Court, in a subsequent memorandum and order on attorneys' fees, stated "On August 4, 2022, the Court denied Plaintiffs' motion for summary judgment with respect to their Fourth Amendment claims, granted Plaintiff's motion for summary judgment with respect to their procedural due process claims, and directed Plaintiffs to move for compensatory damages and attorneys' fees." See Santander Consumer USA, Inc. v. Port Authority of N.Y. & N.J., No. 20-cv-1997(MKB), 2023 U.S. Dist. LEXIS 157682, at *3 (E.D.N.Y. Sept. 6, 2023).

11

pending his trial.  Id.  Eventually, the pills were again retested and found to contain no controlled substances.  However, during that time, Plaintiff remained in pretrial detention for forty-eight (48) days.  Id.  In a subsequent lawsuit filed by Plaintiff, the Court determined that pretrial detention can be challenged on Fourth Amendment grounds and that Plaintiff had a claim not only for unlawful arrest but also for his pretrial detention, which were both based on fabrications by the police.  Id. at 913.  The facts of Manuel have no bearing on the facts at issue herein.  Manuel involves the unlawful arrest and pretrial detention of an individual in a criminal proceeding while the instant action involves challenges to statutory requirements to pay fees for services rendered by a tow company in connection with the booting, towing, and storing of a vehicle seized to satisfy outstanding parking violation judgments.  Therefore, the Court's determination in Manuel has no relevance to the Fourth Amendment claim asserted by Plaintiff in this action.

Accordingly, the City's initial seizure and continued retention of the vehicle to satisfy outstanding parking violation judgments was reasonable under the Fourth Amendment.

**III.      The City is Entitled to Summary Judgment on Plaintiff's Takings Claim**

Plaintiff's reply papers fail to address the arguments made by the City as to the takings claim.  Rather, Plaintiff asserts that "[the City] confirms that it refused to turn over the Vehicle until it extracted *ipse dixit*, over $14,000.00 from a third party to, at least in part, cover the cost of the [Boot and Tow] program,'" and that such appropriation of private funds "to cover the costs of government actions is….an admission of a taking in its purest form."  Pl. Opp. Mem. at p. 12.  Plaintiff's claim is wholly misguided.

Plaintiff's characterization of the City's purpose for collecting fees as one to "cover the costs of its Boot and Tow Program" is disingenuous.  Rather, the City simply requested what it is entitled to under CPLR § 8013(c), N.Y. Tax Law §§ 1105(c)(3) and (c)(6)—to reimburse tow

companies for booting, towing and storage costs— and, further, requested Plaintiff's compliance with the statute's requirement that as lienholders they pay those fees upon retrieval of the vehicle.

Regardless, Plaintiff still fails to demonstrate that a taking has occurred. Generally, a taking occurs when the government takes possession of an interest in property for some public purpose for a period of time during which the property owner "ha[s] no use of the property or was unable to use the property." Bt. Holdings v. Vill. Of Chester, 670 Fed. Appx. 17, 18-19 (2d Cir. 2016); See also Elmsford Apartment Associates LLC v. Cuomo, 20-cv-4062 (CM), 2020 U.S. Dist. LEXIS 115354, at *25 (quoting Tahoe—Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 330 (2002) ("A categorical regulatory taking occurs in 'the extraordinary circumstance when no productive or economically beneficial use of land is permitted.'")

Here, Plaintiff's reply papers fail to demonstrate that the City's policy and procedure for seizing vehicles in satisfaction of parking violation judgments left it with no "productive or economically beneficial use" of the vehicle. Elmsford Apartment Associates LLC v. Cuomo, 20-cv-4062 (CM), 2020 U.S. Dist. LEXIS 115354, at *25 (June 29, 2020). At any time after Plaintiff was notified of the vehicle seizure, Plaintiff could have retrieved the vehicle by submitting the requisite paperwork and paying booting, towing and storage fees (which Plaintiff then could have recovered from the vehicle owner per its contract). Plaintiff admits that it was first notified about the Vehicle No. 793 seizure on or about October 18, 2019, and received a Notice to Release from the City on November 6, 2019. See Pl. 56.1 St., ¶¶ 16,19. However, between November 6, 2019 and December 13, 2019 (the date the Vehicle was auctioned), Plaintiff failed to retrieve the vehicle. Had Plaintiff taken immediate action once it received the Notice to Release on November 6, 2019, Plaintiff could have retrieved the vehicle prior to the December 13, 2019 auction date.[6]

---

[6] Tellingly, Plaintiff's reply papers are silent as to what happened between the time Plaintiff obtained the Notice to Release and the date of the auction of the vehicle. Had Plaintiff presented the Notice to Release

13

Accordingly, Plaintiff's reply papers clearly fail to cure the deficiencies in Plaintiff's takings claim and, therefore, the City is entitled to summary judgment on Plaintiff's Fifth Amendment takings claim.

**IV.   Plaintiff is not entitled to Summary Judgment on Damages**

Assuming arguendo the City is liable to Plaintiff, Plaintiff cites no authority for the proposition that it is entitled to damages in the amount of $14,000 – that is, the amount at which the vehicle sold at public auction. See Pl. Mem. at p. 5. The amount is unwarranted particularly here where Plaintiff obtained a release from the City to repossess the vehicle but failed to retrieve the vehicle prior to the auction. See Def. 56.1 St., ¶ 45-48. Moreover, in accordance with CPLR § 5234(a), the City subtracted costs, fees, and judgments from the proceeds of the sale and turned over the remainder to the vehicle owner. See id. ¶ 50-51.

**V.    The City is entitled to Summary Judgment on FJA's Cross Claim for Indemnification**

FJA asserts that it has "proffered a colorable claim for common law indemnification under New York Law as any judgment entered against Five J's should equitably be the responsibility of [the City]." See Five J's Memorandum of Law in Opposition to City of New York's Motion for Summary Judgment Dismissing the Cross-Claim dated July 14, 2023 (ECF No. 84).

FJA fails to provide support for its assertion. Rather it simply states, without citation to any case law, that "liability may only be found against FJA if the statutes pursuant to which the [City] towed the vehicles and assessed fines are found unconstitutional." Id. at 1. FJA further fails to address the City's argument that the contract between the City of New York and Paylock explicitly states "[n]othing contained in the agreement between Paylock and the subcontractor [i.e., FJA], or under the agreement between the City and Paylock, shall create any contractual relation between

---

to FJA and paid the statutorily required fees, Plaintiff could have sold or leased the vehicle, further undercutting any argument that it was left with no productive or economically beneficial use of the vehicle.

the subcontractor and the City." Duston Dec., Ex. 9. Because there is no contract between the City and FJA establishing FJA's entitlement to indemnification and because FJA provides no support for its claim, FJA's cross claim is without merit.

## **CONCLUSION**

For the reasons set forth above and in its initial moving papers, the City requests that the Court grant its cross-motion for summary judgment dismissing the Complaint in its entirety.

Dated: New York, New York
September 22, 2023

**HON. SYLVIA O. HINDS-RADIX**
Corporation Counsel of the City of New York
Attorney for City Defendant

By:     /s/
    Edward Murray
    Samantha Schonfeld
    Assistant Corporation Counsels